CHARLES WEAVER *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon April 22, 1890.*

1. CRIMINAL LAW—*assault to murder—of the intent—as an essential element—how to be shown—presumption.* On an indictment for an assault with intent to murder, the specific intent charged is an essential element in the offense, and must, like any other fact necessary to constitute the crime, be proved beyond a reasonable doubt.

2. When the whole case is considered, the jury must believe, beyond a reasonable doubt, that the assault was made with the murderous intent charged. Specific proof of the intent is not essential, but the intent may be established by evidence of the attending facts and circumstances.

3. It is not necessary, to constitute an intent to murder, that the party charged shall have brooded over it, or have entertained it for any considerable time. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted, or it will be enough if he is actuated, in making the assault, by that wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstances that if death had ensued the killing would have been murder.

4. Every sane man is presumed to intend all of the natural and probable consequences flowing from his own deliberate acts. Therefore, if one voluntarily and willfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is, that the destruction of such other person's life was intended.

5. On the trial of one for an assault with intent to murder, the jury will be justified in taking into consideration the character and manner of the assault; that it was made deliberately, with a weapon capable of inflicting death; that the blows were inflicted upon a vital part of the person assaulted, and all the attendant circumstances.

6. SAME—*reasonable doubt.* The reasonable doubt that will justify and require an acquittal, must be as to the guilt of the accused, when the whole evidence is considered. The law does not require the jury to believe that every fact in the case has been proved beyond a reasonable doubt before they can convict. The rule applies only to the material facts necessary to constitute the crime.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. C. S. CONGER, Judge, presiding.

Mr. RUFUS COPE, and Mr. GERSHOM A. HOFF, for the plaintiffs in error:

The intent to murder is essential. If this element is wanting, the charge is not made out. The intent requisite is not merely to make an assault or to commit an offense, but an intent to take life.

When an assault is made with malice aforethought, and death results, the law presumes that the defendant intended the natural consequence which follows from his act. When death does not result, there can be no legal presumption except that the defendant intended such consequences as did follow from his act. The question of intent to murder must be determined without the aid of any presumption of law.

The instruction that the law does not require that every fact in a criminal case shall be proved beyond a reasonable doubt, is misleading. Every essential fact must be proven beyond a reasonable doubt. A fact which is not an essential part of the charge is not a fact in the case. A jury would not construe this instruction as applying merely to any fact testified to, but to facts involved in the issue. Strictly construed, this instruction does not state the law; and construed according to its apparent import, it could not fail to mislead the jury as to the necessity of proving, beyond a reasonable doubt, the one essential fact, the intent to commit murder, which was the only fact in the case about which there was any controversy.

To say that the instruction means, and would be understood to mean, that it was not necessary to prove, beyond reasonable doubt, every act or conversation testified to, is to say that it is a very silly and unnecessary instruction. The jury were warranted in believing that it meant something, and a natural interpretation of it is, that the intent need not be shown beyond a reasonable doubt. It is true, there are other instructions,

which state the law clearly.    But in this kind of case, an in-struction which will warrant a wrong verdict ought not to be given.

Mr. George Hunt, Attorney General, for the People :

It is a legal presumption that the natural and probable con-sequences of every act deliberately done were intended by its author.  *Commonwealth* v. *York,* 9 Metc. 93 ;  Wharton on Crim. Ev. sec. 736 ;  Wharton on Law of Ev. sec. 1258 ; 3 Greenleaf on Ev. sec. 14.

Where a person does an act, he is presumed to have intended that the natural and legal consequences of his act shall result. Lawson on Presumptive Ev. 262 ;  *Curtis* v. *Leavitt,* 15 N. Y. 1 ;  *Dunaway* v. *People,* 110 Ill. 333 ;  *Perry* v. *People,* 14 id. 496 ;  *Vandermark* v. *People,* 47 id. 122.

Mr. H. W. Shriner, State's attorney, also for the People :

The intent must be shown by proof of such facts and circum-stances as would have constituted murder had death resulted. *(King* v. *State,* 21 Ga. 220 ;  *State* v. *Malcom,* 8 Iowa, 413 ;  *Sharp* v. *State,* 19 Ohio, 379.)    Therefore, if murder is charged to have been intended to be committed, the evidence must show that if death had ensued it would have been murder.  *State* v. *Neal,* 37 Me. 468 ;  *State* v. *Anderson,* 2 Tenn. 6.

Where the act is committed deliberately, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed.  *Conn* v. *People,* 116 Ill. 458 ;  *Dun-away* v. *People,* 110 id. 333.

In this case the assault was so wanton, reckless, and with such a total disregard for human life, that it is apparent, at the first glance, that if Smith had been killed the defendants would have been guilty of murder—and this is not denied by defendant's counsel ; and this is the only rule by which to measure the intent, where the assault is committed deliber-ately, and in such manner as to be dangerous to life, and rea-

sonably likely to result in death. The instruction complained of is the law and the common sense of every criminal case, and has been sanctioned by this court in every case where it has arisen, even after hair-splitting, discriminating counsel have discovered in it a lurking danger that might mislead a jury. *Davis* v. *People,* 114 Ill. 98; *Crews* v. *People,* 120 id. 317; *Mullins* v. *People,* 110 id. 42.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

Plaintiffs in error, Charles Weaver and Joseph Lebus, were jointly indicted at the September term, 1889, of the Clay county circuit court, for an assault with intent to murder one William H. Smith. A trial resulted in conviction and sentence of the defendants, severally, to the penitentiary, and they now prosecute this writ of error.

It is conceded that the indictment is sufficient to sustain the conviction, as it clearly is; but it is contended, that the evidence of the specific intent charged is insufficient to authorize the verdict, and that the court erred in instructing the jury. About eight o'clock of the evening of September 5, 1889, William H. Smith was standing at a street corner in Flora, in Clay county, in conversation with one Hall, when he was struck on the back of the head with a brick, knocked down, and so stunned that he remained unconscious until noon of the next day. The cuts and wounds upon the head were severe, and clearly showed that several blows were struck. The assault was in the night, without warning to Smith, with a deadly weapon, and absolutely without any circumstances of palliation, or that would tend to justify or excuse it. That the defendants were acting together in the assault is clearly shown, and is not denied. On the next day, Lebus, in the presence of Weaver, said to a witness: "Charley (Weaver) knocked him down, and I knocked him a time or two." To another, Weaver said, speaking of said Smith, "We done him up," and that they had stamped him. Witness said, "I heard you threw a brick

at him," and Lebus replied, "Weaver knocked him down with a brick, and I kicked him." The witness then said something to Weaver, to the effect that he had better be on his guard against Smith, when Weaver replied: "I'm not afraid—I'll kill the God damned son of a bitch."

That defendants were guilty of a most unprovoked, wanton and malicious assault upon the prosecuting witness, with a weapon capable of producing death, by blows upon the head, where the same were inflicted, is substantially conceded,—and, if it was not, is abundantly shown; and if death had resulted, it can not be questioned that the killing would have been murder. The contention of counsel seems to be, that there must be some specific proof of the intent charged, and that it must be established in some way other than by evidence of the attending facts and circumstances. The specific intent alleged is an essential element in the offense charged in the indictment, and must, like any other fact necessary to constitute the crime, be proved beyond a reasonable doubt,—that is, when the whole case is considered, the jury must believe, beyond a reasonable doubt, that the assault was made with the intent alleged. It is not requisite or necessary, however, that the party charged should have brooded over the intent, or entertained it for any considerable time. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted; or it will be enough if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstances that if death had ensued the killing would have been murder. Thus, when a person deliberately and wantonly shoots into a crowd of people, either with or without actual malice toward any one there, and wounds one of the persons in the crowd against whom he had no actual malice, he will be held to be actuated by general malice, and to have intended the result of his unlawful and malicious act. Every sane man is presumed to intend all of the natural and probable consequences flowing

from his own deliberate act. Therefore, if one voluntarily and willfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is, that the destruction of such other person's life was intended. Roscoe on Crim. Ev. 584; *Dunaway* v. *People*, 110 Ill. 333; *Perry* v. *People*, 14 id. 496; *Vandermark* v. *People*, 47 id. 122; *Commonwealth* v. *York*, 9 Metc. 93; *Commonwealth* v. *Dunn*, 58 Pa. St. 17; *Walker* v. *State*, 8 Ired. 290.

The jury were justified in taking into consideration the character and manner of the assault,—that it was made deliberately, with a weapon capable of producing death, that the blows were inflicted upon a vital part of the person of the prosecutor, and all the attendant circumstances,—and were, we think, warranted in the conclusion that the death of Smith was intended by the assailants. But if this were not so, there is strong and convincing evidence of the intent. For some reason not fully explained, it is shown that the defendants entertained a grudge or ill-will toward said Smith. Between seven and eight o'clock of the same evening, and before the assault, the witness Venable met the defendants, four or five doors from the corner where the assault was made, and Lebus asked the witness if he had seen the said Smith. Upon being told that he had seen Smith down street, Lebus then asked: "Is your boy, Dry, with him?" and continued, "If he is, you get him away, for we are going to get him to-night." The witness asked who, and Lebus answered, "Bill Smith," and the two, Weaver and Lebus, started to walk to the east. Charles James met Lebus going east, and some one, who, witness could not tell, passed, and witness heard Lebus say, "If we find him, we'll kill the son of a bitch." About twelve o'clock of the day of the assault, Lebus told another witness that if Bill Smith was in town that night there would be fun,—"they would get him." Immediately after the assault, Lebus ran west and passed the witness Enyart, and remarked, apparently

to himself, "We (or I) didn't hardly get him." Weaver, it seems, went in another direction from that taken by Lebus, and ran by where the witness Turner was standing, who heard Weaver say, "We didn't hardly get him, God damn him." About fifteen minutes after eight o'clock, and after the assault, defendants were again together, and passed the witness Stapleton. Lebus waved his hand in Stapleton's face, and said: "We got one son of a bitch, and there are about three more we will get." The jury were abundantly justified in finding the defendants each guilty of the crime charged in the indictment.

The only instruction complained of, given on behalf of the People, is as follows:

"The law does not require that the jury shall believe that every fact in a criminal case has been proved beyond a reasonable doubt, before they can find accused guilty. The reasonable doubt the jury is permitted to entertain must be as to the guilt of the accused on the whole of the evidence, and not as to any particular fact in the case."

The rule is so well settled by repeated decisions, that the reasonable doubt that will justify and require an acquittal must be as to the guilt of the accused when the whole of the evidence is considered, that citation of cases is unnecessary. The jury were fully instructed, in numerous instructions, that they must believe, from the evidence, not only that the defendants assaulted said Smith, as charged in the indictment, but must also believe, from the evidence, beyond a reasonable doubt, that the assault was made with the intent to kill him, before they could find the defendants guilty. The instruction contains a correct proposition of law, and, in view of the facts and instructions given, could not have misled the jury into the belief that every material fact necessary to constitute the crime was required to be proved beyond a reasonable doubt. The defendants were properly convicted, and have no legal or just cause of complaint.

The judgment is affirmed. *Judgment affirmed.*