## WILLIAM CROWELL

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1901.*

1. CRIMINAL LAW—*test whether assault is with intent to murder.* The test whether a party is guilty of assault with intent to murder is not whether he succeeded in inflicting a wound which is likely to produce death, but whether the assault is of a character likely to be attended with dangerous consequences and of a nature to cause death, in which case malice and intent will be presumed.

2. SAME—*what does not invalidate verdict of guilty of assault with intent to murder.* A verdict of guilty of assault with intent to murder is not invalidated by the fact that some two hours after the jury had retired, the court, at their request, read them an additional instruction stating the punishment for assault with intent to murder and for assault with a deadly weapon, where the accused was in the court room lying upon a bench, and the instruction was read in a tone loud enough to be heard by the accused and his counsel, who were present but otherwise engaged.

3. SAME—*when instruction authorizing conviction if facts stated are proved is proper.* It is not error to give an instruction reciting every essential fact necessary to constitute the crime of assault with intent to murder, and authorizing the jury to find the accused guilty thereof if they believe the facts recited therein to have been proved beyond a reasonable doubt, since, if all the facts constituting such crime have been proved beyond a reasonable doubt, the law does not authorize a conviction for a lesser offense. (*Panton* v. *People,* 114 Ill. 505, and *Lynn* v. *People,* 170 id. 527, distinguished.)

4. INSTRUCTIONS—*court need not read defendant's instructions together as the closing address to the jury.* The instructions constitute one charge, and are not to be treated as the instructions of either party but of the court, and it is not objectionable for the court to group instructions on particular subjects so that the jury may have those upon the same subject, and which qualify each other, in juxtaposition, forming a more connected statement of the law than if separated.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. A. K. VICKERS, Judge, presiding.

DUNCAN & DENISON, for plaintiff in error:

A person indicted for a felony must be personally present during every stage of the trial therefor, and his presence must affirmatively appear by the record. *State* v. *Myrick*, 38 Kan. 240; *Harris* v. *People*, 130 Ill. 457; *Holliday* v. *People*, 4 Gilm. 111; *Nomaque* v. *People*, Breese, 145; Const. 1870, art. 2, sec. 9; *Prine* v. *Commonweath*, 6 Harr. 103; *Sweeden* v. *State*, 19 Ark. 205; *Bearden* v. *State*, 44 id. 331; *Dougherty* v. *Commonwealth*, 69 Pa. St. 286; *Adams* v. *State*, 28 Fla. 511; *State* v. *Schoenwald*, 31 Mo. 147; *Younger* v. *State*, 2 W. Va. 579; *Jackson* v. *Commonwealth*, 19 Gratt. 656; *State* v. *Blackwelder*, 61 N. C. 38; *Peters* v. *State*, 39 Ala. 681; 1 Chitty on Crim. Law, 414; 1 Bishop on Crim. Proc. 273-275; *Andrews* v. *State*, 34 Tenn. 550.

It is reversible error for the trial court to re-charge the jury in the absence of a prisoner charged with a felony. It is an invasion of his constitutional rights. *Johnson* v. *State*, 100 Ala. 58; *State* v. *Meagher*, 49 Mo. App. 590; *Cooper* v. *State*, 79 Ala. 55; *McNeil* v. *State*, 47 id. 498; *Tiller* v. *State*, 96 Ga. 432; *Bonner* v. *State*, 67 id. 511; *Wade* v. *State*, 12 id. 29; *Wilson* v. *State*, 87 id. 584; *Roberts* v. *State*, 111 Ind. 340; *Maurer* v. *People*, 43 N. Y. 1; *Jones* v. *State*, 26 Ohio St. 208; *Territory* v. *Lopez*, 3 N. Mex. 107; *Crabtree* v. *Hagenbaugh*, 23 Ill. 289; Const. 1870, art. 2, sec. 9; 11 Ency. of Pl. & Pr. 282.

Since one indicted for an assault to murder may be found guilty of an assault with a deadly weapon, etc.,

it is error to instruct the jury that if they believe the facts stated in the instruction to be proved, then they should find the defendant guilty of assault to murder. *Steiner* v. *People,* 187 Ill. 244; *Panton* v. *People,* 114 id. 505; *Lynn* v. *People,* 170 id. 527.

Instructions numbered 7, 9 and 13 given for the People violate the above principle of law.

An instruction which singles out and gives undue prominence to certain facts, ignoring other facts proved and of equal importance in a proper determination of the case, is improper. Especially is this true where the evidence selected is slight or contradictory. *Logg* v. *People,* 92 Ill. 598; *Hoge* v. *People,* 117 id. 35; *Cannon* v. *People,* 141 id. 270; *Medley* v. *People,* 49 Ill. App. 218; *Frame* v. *Badger,* 79 Ill. 441; *Calef* v. *Thomas,* 81 id. 478; *Cushman* v. *Cogswell,* 86 id. 62; *Railway Co.* v. *Walsh,* 106 id. 253; *Callaghan* v. *Myers,* 89 id. 566.

Where there is a conflict in the evidence it is important that the instructions should be not only accurate, but clear and perspicuous. *Volk* v. *Roche,* 70 Ill. 297; *Waters* v. *People,* 172 id. 367.

H. J. HAMLIN, Attorney General, and R. R. FOWLER, State's Attorney for Williamson county, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error, William Crowell, was indicted for an assault with intent to murder Thomas E. Lowery, and upon a trial was found guilty and sentenced to confinement in the penitentiary.

One of the grounds upon which a reversal of the judgment is asked is, that the trial court erred in not granting a new trial because the verdict was against the evidence. The facts established by the evidence are in substance as follows: On April 14, 1900, Crowell and James Coontz were returning home from Creal Springs, in Williamson

county, riding in Coontz's wagon. Coontz was driving his team of horses, and they met Thomas E. Lowery and his hired man,'Burt Barnett, who were going east on the same road, each driving a mule team with a load of railroad ties. Lowery owned the mule teams and Burt Barnett worked for him. Lowery's team was in front, and as they came down a hill they met Coontz's team near the foot of the hill. The horses stopped with their heads about even with the heads of the first mule team, and the hind wheels of that wagon, which was driven by Lowery, were near to or resting on a culvert, with the team driven by Barnett just behind it. Lowery had .been informed that Crowell had told some scandalous tales about Lowery's wife and Barnett, and he had told Barnett that morning, after Barnett denied telling them, that it lay between Crowell and him; that one or the other of them had lied, and whichever one it was had to take a whipping. They expected to meet Crowell on the road coming west from Creal Springs, and Lowery said he would find out which one told the lie. When they met, Barnett requested that he be permitted to speak to Crowell first ·about the reports, and went forward and did so. Crowell got off the wagon and stepped forward to a point about even with the heads of the horses and on the north side of the road. He denied that he had made any statement except what Barnett had told him, and accused Barnett of making the statements. Barnett said he guessed he had storied, and told Lowery that Crowell denied telling the lie, and asked if that was satisfactory. Lowery was sitting on his wagon, and replied "Yes," but that Crowell had circulated a report of his stealing ties, and accused him of lying about that. Crowell drew his revolver and Lowery jumped off his wagon, taking what is called a brake pole,—a stick of green persimmon wood about four feet long. He jumped off on the opposite side from Crowell and went to the heads of the mule team. Crowell aimed at Lowery and snapped the revolver, but it did

not go off. Lowery then went along on the south side
of Coontz's wagon, and Crowell, on the opposite side,
stooped down or squatted and aimed the pistol at him
under the wagon. Lowery climbed on the wagon and sat
down by Coontz, who was telling Crowell not to shoot.
Crowell stood in front of the team with the revolver,
flourishing it, and the parties quarreled five or ten min-
utes. Lowery offered to give the club to Crowell and
fight him without arms, but Crowell refused, and said
he would shoot him if he offered to strike him. Finally
Coontz persuaded Crowell to start on home, and Lowery
got off of Coontz's wagon and went back along the south
side of the wagon to the west end of his wagon. Coontz
started to drive around the mule teams in the direction
of Crowell, who was west of them and daring Lowery to
approach any nearer, and telling him if he came across
a small branch there he would shoot him. Lowery said
that he did not want to die bad enough to go across
the branch, but would go to the end of his wagon if he
wanted. Crowell told him to go to the end of it but not
to go past the end of the wagon. Lowery told Crowell
he was a coward, and his old pistol was rusty and would
not shoot. After passing Lowery's teams, Coontz stopped
his team and told Crowell to get into the wagon. Low-
ery was a few steps past his west wagon and from twenty
to thirty feet from Crowell, carrying the brake pole in
his hand. Crowell was about to get into the wagon with
Coontz, and then deliberately took aim and shot Lowery
above the knee, making a flesh wound. Lowery dropped
his brake pole, clapped his hand upon the wound and
turned and started away. Crowell then fired the second
shot from behind Lowery, and it took effect in the center
of the calf of Lowery's leg. The bullet embedded itself
in the large bone below the knee, fracturing the bone.

The principal claim that the verdict is against the
evidence is on the ground that the shooting was in self-
defense, but there was no evidence tending to make

out such a defense. The evidence is contradictory as to whether Lowery even held the persimmon stick in a threatening attitude, and the jury were justified in believing that he was walking with it with one end on the ground. At any rate, he was from twenty to thirty feet from Crowell, and there was no danger, either real or apparent, from the club. Crowell had snapped the pistol at Lowery before, when he was not in danger, and had stooped and aimed under the wagon when Lowery was on the other side and not attempting to reach him.

Another ground for claiming that the assault was not with intent to commit murder seems to be that the shots, as they took effect, were not likely to produce death unless there should be blood poisoning. The testimony is that death might result from the wounds in case of blood poisoning, but the test whether a party is guilty of assault with intent to commit murder is not whether he succeeds in inflicting a wound which is likely to produce death. The question is whether the assault is of a character likely to be attended with dangerous consequences and of a nature to cause death. Where the assault is committed deliberately and is likely to result fatally, the malice requisite will be presumed, and the question in this case is whether shooting at a man with a revolver in the manner proved by the evidence would be likely to kill him. The evidence fully warranted the verdict of the jury. The conduct of Lowery was not commendable, but there was no act on his part which would justify or excuse the assault.

The next complaint is, that the court gave an instruction to the jury in the absence of the defendant, and that this was an invasion of his constitutional right to be present. The record shows that he was present, and the bill of exceptions recites that after the jury had retired for deliberation on their verdict and had been out about two hours they were brought into open court by the officer, and at their request for an instruction as to the na-

ture of the punishment the court wrote and gave to them the following instruction:

"You are instructed that the punishment for an assault to murder is imprisonment in the penitentiary; that the punishment for an assault with a deadly weapon is by fine and imprisonment in the county jail."

The defendant was in the court room, but was sick, and lying on a bench about fifty or sixty feet from the judge. The instruction was read in a loud tone, sufficient to be heard all over the court room. There was an affidavit of the defendant on the motion for a new trial, from which it is to be concluded that his counsel were present in the court room but otherwise engaged. It does not show that they were not present, and they necessarily heard the instruction read. It is not improper to give an additional instruction after the jury has retired, where equal opportunity is given to the parties to submit further instructions if desired. (*Lee* v. *Quirk*, 20 Ill. 392; *Shaw* v. *Camp*, 160 id. 425; 11 Ency. of Pl. & Pr. 284.) It is said, however, that the jury were not entitled to know the amount or character of punishment to be inflicted, since they were not to fix the punishment. We do not see how the defendant could have been harmed by the knowledge of the jury as to the nature of the punishment, or what would be the consequences of their verdict, in that respect. With that knowledge they might have found him guilty of an assault with a deadly weapon if the facts justified such a verdict. We do not think the verdict invalidated by the fact that the court gave the instruction.

The next point insisted upon is, that the court erred in giving to the jury instructions numbered 7 and 9 at the instance of the People, because the instructions stated that if certain facts, which in law constitute the offense of assault with intent to commit murder, were proved beyond a reasonable doubt, the jury should find the defendant guilty of an assault with intent to commit murder. There is no claim that these instructions lack any

ingredient necessary to constitute the offense of an assault with intent to commit murder, or that if the facts recited therein were proved beyond a reasonable doubt the defendant was not guilty of an assault of that character. The argument is, that although the law fixes the grade of the offense at an assault with intent to commit murder, it is error for the court to tell the jury that if all the facts necessary to establish the crime are proved beyond a reasonable doubt they should find the defendant guilty of the crime so proved. It is true, that where one is indicted for an assault with intent to commit murder and the facts establish an assault of a lower grade, the jury may convict him of the lesser offense; but the law does not authorize or intend that a person guilty of an assault with intent to commit murder shall be found guilty of an assault of a lower grade, or that the jury shall be left free to do so regardless of the evidence. It is the common and approved practice to explain to the jury what will constitute the crime of murder and what will make the crime manslaughter or some lesser offense, and to tell the jury, as was done in this case, what will constitute an assault with intent to commit murder and what would be an assault with a deadly weapon. The law is, that if a defendant is guilty of an assault with intent to commit murder he ought to be convicted by the jury of that offense, and if the facts show a lesser offense he should be convicted of such lesser offense, and the statute so requires. It is not designed that he should be found guilty of a lesser crime than an assault with intent to commit murder, upon proof, beyond a reasonable doubt, of an assault with malice aforethought of a .character likely to cause death, or where the facts show a reckless or total disregard of human life. If an instruction explains to the jury what in law constitutes the crime of murder or an assault with intent to commit murder, it would be an anomaly to instruct them that the law is, as claimed, that notwithstanding proof of such a crime

they may, if they choose, find the defendant guilty of some lesser offense. No court would think of giving such an instruction, and yet, if the argument against these instructions is sound, the defendant would have a right to such an instruction.

The argument is based upon the disapproval of certain instructions in *Panton* v. *People,* 114 Ill. 505, *Lynn* v. *People,* 170 id. 527, and *Steiner* v. *People,* 187 id. 244. In *Panton* v. *People,* 114 Ill. 505, the defendant was convicted of murder. It appears that the defenses were insanity and self-defense. The hypothesis of fact upon which the jury were ordered to find him guilty of murder in the instruction which was condemned was, that the evidence proved, beyond a reasonable doubt, that the defendant committed the homicide, and at the time was able to distinguish between right and wrong and know that the act committed was wrong and in violation of law, and he was liable to be punished therefor. The rule of law stated was, that no matter what delusion he may have had, the alleged insanity would not constitute a legal defense and the jury should find him guilty of murder. The instruction was objected to as telling the jury to pay no attention to any other defense than insanity, and to consider no mitigating circumstances, but to find the defendant guilty of murder. Although the defendant committed the homicide, yet, for all that was stated in the instruction, the offense might be only manslaughter. The instruction, instead of containing the facts necessary to constitute murder, assumed all facts beyond the killing of the deceased and the sanity of the defendant and directed a verdict, and that is wrong in any case. The court said: "Under an indictment for murder a defendant may be found guilty of manslaughter, and the jury, here, should have been left free to find in that respect, without being directed by the court how they should find. The court should have said no more in such respect in the instruction than that the jury should find the defendant guilty."

That was plainly correct, since, under the facts stated, the crime might have been manslaughter.

That it was not intended to lay down a rule that a jury might rightfully find a verdict different from that justified by the evidence is shown by the decision in *Conn* v. *People*, 116 Ill. 458. The defendant was convicted of an assault with intent to commit murder, and the trial court gave the sixth instruction, as follows: "If the jury believe, from the evidence, beyond a reasonable doubt, that the defendant pointed the revolver at the said John Warnicott, as charged in the indictment, and discharged the same either with malice aforethought or with a reckless and total disregard of human life, and that the use of the said weapon, as used by the said defendant, was likely to kill the said John Warnicott, then the said defendant is guilty of an assault with intent to commit murder." The court, speaking by the same learned justice who delivered the decision in *Panton's case,* said that the instruction stated the law with substantial correctness as held by this court, and approved it, citing *Perry* v. *People*, 14 Ill. 496, and *Dunaway* v. *People*, 110 id. 333, and stating the principles there laid down. The court said: "This would seem explicitly to cover and justify the sixth instruction, and the others would follow as consequences from what is asserted in that instruction." Again, in *Crosby* v. *People*, 137 Ill. 325, Crosby was indicted and convicted for an assault with intent to murder, as the defendant was in this case. The trial court gave this instruction: "And the court further instructs the jury, that if they believe, from the evidence, beyond a reasonable doubt, that the defendants, or one of them, assaulted the witness Belle Bennett with malice aforethought or with reckless and total disregard of human life, and the character of the assault was such as was likely to cause the death of such Belle Bennett, then the jury should find the defendant guilty of making such an assault, guilty of an assault with intent to commit murder, as charged in

the indictment." The court approved the instruction and cited the former cases. Under these authorities the rule contended for cannot be applied to this case, for they were both of the same character as this.

In *Lynn* v. *People*, 170 Ill. 527, the defendant was a peace officer, and the court in its instructions ignored that fact and his duty to keep the peace when he was called upon to quell a disturbance. An officer in discharge of his duty is not subject to the same rule as applies to individuals, but the court gave instructions on self-defense and the duty to decline combat, etc., and we held that the court should have given the law as applicable to the facts in evidence. The direction to find Lynn guilty of murder was not based on sufficient facts or applicable to the case under the rules of law. In *Steiner* v. *People*, 187 Ill. 244, the instruction which directed the jury to find the defendant guilty of murder was based upon the hypothesis of fact that there was a struggle between the defendant and the deceased, in which the defendant inflicted the mortal wound, causing death; that said wound was not necessary to save defendant's life or save himself from great bodily harm, and that it was not inflicted upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible. The instruction was condemned for ignoring the doctrine of apparent danger in cases of self-defense, and the facts stated were for that reason not sufficient to constitute murder. For aught that was stated in that instruction it might have been apparently necessary to inflict the mortal wound in self-defense, and a direction to find the defendant guilty of murder or anything else upon such an hypothesis was erroneous. No authority has been cited where an instruction was condemned which was free from objection and applied to the facts of the particular case, and which contained every element necessary to constitute the particular crime. We do not think the court erred in giving the instructions complained of.

The next complaint is, that instruction No. 15 given at the request of the People gives undue prominence to certain evidence. It says, in substance, that if the defendant shot Lowery simply because he violated his challenge to go back of the wagon, and not from any purpose of self-preservation, the jury should convict him. It was applicable to the evidence, and the complaint is not well founded.

Objection is made to instruction No. 14, but that instruction was in favor of the defendant. It told the jury that they should acquit him if they should find that he was not guilty of an assault with intent to murder, and if the evidence failed to show that at the time of the shooting there was no sufficient provocation, or that he had an abandoned and malignant heart. There was no error in the rulings on the instructions.

The last alleged error is, that the court did not read the instructions asked by the defendant, and given together as one body, as the closing address to the jury. The court separated the instructions and read them in an order chosen by the court. The instructions constitute one charge, and they are not the instructions of either party, but of the court. The parties are privileged to ask instructions and the court gives such as are approved statements of the law, but they are not in the nature of arguments or an address to the jury in behalf of either party. They generally present opposite theories and qualify each other. It is at least not objectionable to group the instructions on particular subjects and give them to the jury, so that they may have those upon the same subject and which qualify each other, in juxtaposition, forming a more connected statement of the law than if separated.

The judgment is affirmed.              *Judgment affirmed.*