THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID ERNEST MUIR, Defendant-Appellant.

Second District (1st Division)    No. 74-123

Opinion filed May 19, 1976.—Rehearing denied July 9, 1976.

Ralph Ruebner and Phyllis J. Perko, both of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of attempt murder (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 9—1(a)(2)) after a jury trial and sentenced to four to eight years' imprisonment. He appeals, contending that the indictment was void. He alternatively contends that he was not proven guilty beyond a reasonable doubt, that prejudicial trial errors were committed, and that the sentence was excessive.

Defendant was seen by a policeman crawling away from a store in which a burglary had been reported to be in progress. When the officer reached a point about 50 feet from where the defendant crouched behind a car, he saw that the defendant had a pistol in his right hand. Then he saw defendant's left hand move to the top of the pistol and pull the slide back which was then released. The defendant then locked both hands together and pointed the pistol at the officer. Defendant told the officer to "freeze." The officer recognized defendant, whom he had known for about three months, and walked toward him without his gun drawn, urging him to disarm. Instead, when the officer reached a point approximately 30 feet from defendant, Muir pulled the trigger on the pistol and the officer heard a "click," but the gun did not fire. Defendant began to run, and the officer with his gun drawn pursued him. As defendant ran, he drew back the slide of the pistol and let it release. He then put the pistol over his left shoulder and the officer again heard a "click" without the gun firing. The officer lost sight of the defendant momentarily but finally found him crouched in the front seat of the car by which he had first been seen. The defendant repeated several times after his arrest, "Why didn't you shoot me?"

We first consider the validity of the indictment, which as relevant here states:

> "* * * on or about the 15th day of June, A.D., 1973, at and within Du Page County, Illinois, DAVID ERNEST MUIR committed the offense of ATTEMPT (Murder) in that he did with the intent to commit the offense of Murder in violation of Section 9—1a2 of Chapter 38, Illinois Revised Statutes take a substantial step towards the commission of said offense in that he did without lawful justification point a loaded gun at Randell W. Shepherdson and pull the trigger knowing such acts created a strong probability of death or great bodily harm to said Randell W. Shepherdson in violation of Illinois Revised Statutes 1971, Chapter 38, Section 8—4a * * *."

Defendant argues that the type of murder alleged to have been

attempted is that set forth in section 9—1(a)(2) of the Criminal Code, which provides that, in performing the acts which caused the death "[h]e knows that such acts create a strong probability of death or great bodily harm to that individual or another * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2).) This section, he reasons, does not define a specific intent crime whereas the offense of attempt murder requires an intent to commit a specific offense. Thus, he argues, the indictment fails to state a criminal offense. The State agrees that attempt murder is a specific intent crime but contends that the indictment is sufficient because it alleges a specific intent to "commit murder" which is in accord with the statute defining the offense of "attempt" (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)).

We are faced with the issue squarely since the defendant raised the alleged jurisdictional defect in his post-trial motion. Compare *People v. Pujoue*, 61 Ill. 2d 335 (1975).

We do not agree with defendant's basic contention—that is, that a person may not attempt murder in violation of sections 8—4(a) and 9—1(a)(2) of the Criminal Code. However, we do agree that the indictment was fatally defective because language in it misstated the intent element of attempt (murder).

■■ Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 8—4(a)) provides:

> "(a) Elements of the Offense.
>
> A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

The "specific offense" charged against Muir was murder. The "intent to commit a specific offense" requisite to charge attempt murder is satisfied, in our view, by charging and proving that the defendant acts with intent to kill an individual, with knowledge that his acts would cause death to an individual, or with knowledge that his acts created a strong probability of death to an individual.[1]

The Illinois Supreme Court has recently decided that "the felony murder ingredient of the offense of murder [defined in section 9—1(a)(3)] cannot be made the basis of an indictment charging attempt murder." *People v. Viser*, 62 Ill. 2d 568, 581 (1975).

If, as defendant contends, the intent element of attempt murder may only be satisfied by proof that the accused had an "intent to kill" in the

---

[1] Section 9—1 of the Criminal Code of 1961 defining murder provides *inter alia*:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; * * *."

subjective sense, all of the mental states upon which a conviction of the substantive offense of murder may be based, except the mental stated described in the first phrase of 9—1(a)(1) would be removed from the operation of the general attempt statute.

When viewed in the perspective of the development of the Illinois Criminal Code, it does not seem likely that the legislature intended to completely remove "(a)(2)" murder from the operation of the attempt statute. Both 9—1(a)(1) and 9—1(a)(2) describe "intentional" killings committed maliciously. Thus 9—1(a)(1) and (a)(2) differ from unintentional homicides committed in violation of section 9—3 (Ill. Rev. Stat. 1971, ch. 38, par. 9—3) (involuntary manslaughter) or killings committed under circumstances which effectively negate malice in violation of section 9—2 (Ill. Rev. Stat. 1971, ch. 38, par. 9—2) (voluntary manslaughter).

- Prior to the adoption of the Criminal Code of 1961, there was no crime entitled "attempted murder." There was, however, the crime of "Murder, assault with intent to" (Ill. Rev. Stat. 1959, ch. 38, par. 59) which was defined as follows:

> "Whoever attempts to commit murder by poisoning, drowning, strangling or suffocating another, or by any means, shall be guilty of the crime of assault with intent to murder, and punished accordingly."[2]

The Illinois Supreme Court interpreting the intent requirement of section 59 stated, "Specific intent to take life is the gist of the offense of assault with intent to murder and must be proved beyond a reasonable doubt." (*People v. Shields*, 6 Ill. 2d 200, 205 (1955); see also *People v. Coolidge*, 26 Ill. 2d 533, 536 (1963).) However, the court also said, "It is not requisite or necessary that the party charged should have brooded over the intent, or entertained it for any considerable time, * * * it will be enough if he is actuated in making the assault by wanton and reckless disregard of human life that denotes malice * * *." *People v. Coolidge*, 26 Ill. 2d 533, 536-37 (1963); see also *People v. Shields*, 6 Ill. 2d 200, 206 (1955)), and noted that, absent qualifying facts, the intent to destroy another's life may be inferred "if one wilfully does an act the direct and

---

[2] Murder was defined in the prior code as follows (Ill. Rev. Stat. 1959, ch. 38, par. 358):
"Murder is the unlawful killing of a human being, in the peace of the people, with malice aforethought, either expressed or implied. The unlawful killing may be perpetrated by poisoning, striking, starving, drowning, stabbing, shooting, or by any other of the various forms or means by which human nature may be overcome, and death thereby occasioned. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart."
For a discussion of the relationship between attempts and "assault with intent to" crimes, see Perkins, Criminal Law, ch. 6, §3B (1957).

natural tendency of which is to destroy another's life * * *." (*People v. Coolidge*, 26 Ill. 2d 533, 537 (1963); see also *People v. Shields*, 6 Ill. 2d 200, 206 (1955).) The rationale of the *Coolidge* and *Shields* cases was apparently approved by the Supreme Court in *People v. Koshiol*, 45 Ill. 2d 573, 578 (1970), a case in which the defendant was convicted of attempted murder. A reading of the committee comments appended to section 9—1 (Ill. Ann. Stat., ch. 38, §9—1, Committee Comments—1961, at 8, and 10 and 11 (Smith-Hurd 1972) clearly indicates that section 9—1(a)(2) was intended to codify that state of mind described in the cases as a "reckless disregard of human life that denotes malice" which may be manifested by the deliberate performance of an act "which naturally tends to destroy another's life."

In this regard we note that there is language in several Illinois appellate court cases concerning attempt murder which indicates that proof that the defendant acted with a wanton and reckless disregard of human life will sustain a conviction of attempt murder. See, *e.g.*, *People v. Richerson*, 17 Ill. App. 3d 130 (1974) (abstract opinion), modified in a manner not here material, 56 Ill. 2d 584 (1974); *People v. Wicker*, 4 Ill. App. 3d 990, 995 (1972); *People v. Payton*, 2 Ill. App. 3d 693, 697 (1971); *People v. Taylor*, 56 Ill. App. 2d 170, 173 (1965).

■■ Since it is apparent that an accused may be held to have intended "to commit the offense of murder" if he acted with knowledge that his acts created a strong probability of death, we cannot accept defendant's contention that an indictment which alleges, in essence, that the accused committed attempt murder because he intended to commit the offense of murder and took a specified substantial step toward the commission of that offense with knowledge that his acts created a strong probability of death does not state a criminal offense.[3]

---

[3] We recognize that this view is not in accord with traditional common law analyses of the offense of attempt murder. (See, *e.g.*, LaFave & Scott, Criminal Law, §59 (1972); Perkins, Criminal Law, ch. 6, §3 (1957); Sayre, Criminal Attempts, 41 Harv. L. Rev. 821 (1928).) However, others have expressed the view that liability for attempts may be premised on a state of mind other than a subjective specific intent to kill. (See, *e.g.*, Stuart, *Mens Rea, Negligence and Attempts*, 1968 Crim. L. R. 647; Wechsler, Jones and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Colum. L. Rev. 571, 577 (1961); Smith, *Two Problems in Criminal Attempts*, 70 Harv. L. Rev. 422 (1957). See also *LaJoie v. The Queen*, 33 D.L.R. 618 (3d) (1973), criticized in Note, 8 U.B.C.L. Rev. 364 (1973).) Section 9—1(a)(2) represents a codification of "depraved-heart murder." (See LaFave & Scott, §70, n. 21.) The California Supreme Court has indicated that a conviction for assault with intent to murder may be sustained upon proof that the murder intended was of either the first or second degree, which includes depraved-heart murder. (See *People v. Bernard*, 28 Col. 2d 207, 169 P.2d 636, 640 (1946).) However, the jury may not be instructed on felony murder when the charge is assault with intent to commit murder (see *People v. Heffington*, 32 Cal. App. 3d, 107 Cal. Rptr. 859, 866-68 (1973). See also *People v. Moles*, 10 Cal. App. 3d 611, 89 Cal. Rptr. 226, 228-29 (1970); *Phillips v. State*, 120 Fla. 134, 162 So. 346 (1935); *Dallas v. State*, 170 So. 2d 486 (Fla. App. 1965); *Wood v. State*, 251 So. 2d 556 (Fla. App. 1971); *State v. Hager*, 50 W. Va. 376, 40 S.E. 393 (1901).

■■ However, the indictment also charged Muir with taking a substantial step towards the commission of the offense of murder "knowing that such acts created a strong probability of * * * bodily harm to" the policeman.[4] Cases decided under the former Criminal Code provision defining murder[5] recognized the intent to do great bodily harm as equivalent to an intent to kill (see *People v. Hartwell*, 341 Ill. 155 (1930); *Jennings v. People*, 189 Ill. 320 (1901); and *Morello v. People*, 226 Ill. 388 (1907)) and sufficient to sustain a conviction for murder where a death resulted. However, the Illinois Supreme Court in *People v. Gilday*, 351 Ill. 11, 19-20 (1932) disapproved the following instruction given in an assault with intent to murder case:

> "12. 'The court instructs the jury, as a matter of law, that if you believe from the evidence, beyond a reasonable doubt, that the defendant committed the assault as alleged in the indictment, and if you further find from the evidence in this case, beyond a reasonable doubt, that such assault was committed deliberately and was likely to be attended with dangerous consequences, the malice, or intent, requisite to make out the case as charged will be presumed.' "

In disapproving the instruction, the court said:

> "The intent to make out this case was the intent to murder, while the intent required by the instruction may have been an intent to do bodily injury, only, even though an assault was committed deliberately and was likely to be attended with dangerous consequences."

This distinction between the mental states which will sustain a conviction for murder if a death results and the mental states which are sufficient for attempted murder was also recognized in *People v. Thomas*, 127 Ill. App. 2d 444, 456 (1970). In *Thomas* the defendant had deliberately inflicted severe bodily harm on the victim, but the court reversed the conviction for attempted murder, noting, "There is no question that there was adequate proof to establish the necessary mental state for aggravated battery. We believe, however, that the opportunity for murder was such that there was insufficient proof that defendant intended or attempted to commit that crime." (See also *People v. White*, 7

---

[4] This error was also contained in the instructions to the jury. The only instruction defining the offense attempted was State's No. 15 which read as follows:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or great bodily harm to that individual."

[5] See footnote 2 and Committee Comments to section 9—1 at page 8 (Ill. Ann. Stat., ch. 38, §9—1, Committee Comments—1961, at 8 (Smith-Hurd 1972)).

Ill. App. 3d 1084, 1088-89 (1972) and *People v. Taylor*, 56 Ill. App. 2d 170, 173 (1965).) Aggravated battery is defined in section 12—4(a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 12—4(a)) as follows:

"(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery."

To permit a charge of attempt (murder) to be sustained upon proof of an allegation that the defendant committed an act which allegedly constituted a substantial step towards commission of the offense of murder knowing that such act created a strong probability of great bodily harm would mean that every person who commits or attempts to commit an aggravated battery would be guilty of attempt murder. (Compare *People v. Viser*, 62 Ill. 2d 568 (1975).) In addition, such a conviction could be sustained upon proof that the defendant inflicted or attempted to inflict great bodily harm while entertaining a mental state which is less culpable than "knowingly" required in section 12—4(a). Compare Ill. Rev. Stat. 1971, ch. 38, par. 4—5(b) with Ill. Ann. Stat., ch. 38, §9—1, Committee Comments—1961, at 10 (Smith-Hurd 1972).

Such a blurring of the distinctions between the offenses of attempt (murder) and aggravated battery is not consonant with prior cases construing the intent requirement of attempted murder or assault with intent to murder as an intent to take life.

In addition, it is not consonant with the penalty provisions of the Criminal Code, which made attempt murder potentially punishable by any term of imprisonment in excess of four years and aggravated battery punishable by a term of imprisonment of one to ten years (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a)(1), 12—4(d), 1005—8—1)), to suppose that the legislature intended a conviction of attempt murder to be sustainable upon proof that the defendant committed an act which could constitute an aggravated battery with a mental stated which is less culpable than that required to sustain a conviction for aggravated battery. Such a contention becomes even more unlikely when it is recognized that a person who has allegedly attempted murder often has committed an act which could constitute an assault, rather than a battery. (See Annot., 54 A.L.R. 3d 612 (1973).) In such a situation, in view of the potential for a greatly enhanced penalty, the question of the accused's mental state becomes highly material and should not be defined so that the intent to commit one specific offense (murder) is indistinguishable from the intent to commit another (aggravated battery). As the Supreme Court pointed out in *People v. Viser*, "There is no such criminal offense as an attempt to achieve an unintended result." 62 Ill. 2d 568, 581.

Therefore we hold that the indictment was fatally defective because it

included the language from 9—1(a)(2) referring to "great bodily harm" resulting in an incorrect statement of the mental element requisite for a charge of "attempt murder."[6]

The judgment is therefore reversed. In the view we have taken we do not reach the remaining contentions of the defendant.

Reversed.

GUILD, P. J., and HALLETT, J., concur.

---

[6] Although we recognize that the Supreme Court has held that it is not erroneous to give an instruction defining the offense attempted in an attempt murder case (*People v. Koshiol*, 45 Ill. 2d 573, 579 (1970)) if the language of section 9—1(a)(3) defining felony murder is excluded (*People v. Viser*) we believe the jury would be better guided in future cases if they were given an additional instruction defining "with intent to commit the offense of murder" containing the language of (a)(1) and (a)(2) with the references to "great bodily harm" deleted.