(No. 48756.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID ERNEST MUIR, Appellee.

*Opinion filed June 1, 1977.*

MORAN and GOLDENHERSH, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and John J. Bowman and J. Michael Fitzsimmons, State's Attorneys, of Wheaton (James B. Zagel, Jayne A. Carr, and Anne Taylor, Assistant Attorneys General, of Chicago, and Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Peter B. Nolte, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, David Muir, was convicted of the offense of attempted murder (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 9—1(a)(2)) following a jury trial in Du Page County. He was sentenced to 4 to 8 years' imprisonment. Upon appeal, the Appellate Court for the Second District reversed defendant's conviction. (38 Ill. App. 3d 1051.) We granted the State leave to appeal (58 Ill. 2d Rules 315(a), 604(a)(2)) and now reverse the decision of the appellate court.

A police officer testified for the State that on June 15, 1973, he went to a location where a burglary had been reported to be in progress. The officer testified that when he arrived he saw a figure crawling away from the area. This figure was the defendant. The officer proceeded to a point about 50 feet away from where the defendant was crouched behind a car. At this time, the officer saw that defendant had a pistol in his right hand. The officer testified that defendant pulled back the slide on the top of the pistol with his left hand and held the pistol in both hands pointed at the officer.

The police officer recognized the defendant and proceeded toward him while urging that he drop the gun. The officer further testified that when they were about 30 feet apart the defendant pulled the trigger. The gun did not fire, but the officer heard an audible "click." Defendant began to run, and the officer gave chase. While running, defendant again pulled back the slide and pointed the gun over his left shoulder at the officer. The officer testified that he again heard a "click," but that the pistol did not discharge. After being apprehended, the defendant repeatedly asked the officer, "Why didn't you shoot me?"

Defendant testified that he had placed the call to the local police department and falsely reported a breaking and entering in progress. Defendant also testified that he did not pull the trigger of the gun and that it was his intention to commit suicide by having the police officer shoot him.

The weapon when retrieved was loaded with three cartridges in the clip and two jammed into the chamber of the gun, one behind the other. A sixth cartridge was found along the route over which the defendant had fled. The officer who retrieved the gun stated: "I found it with the slide back and in a jammed condition." The two bullets in the chamber were visible through the opening in the side of the slide.

The appellate court reversed the defendant's conviction on the ground that the indictment was fatally defective. The indictment, in pertinent part, provided that the defendant committed the crime of attempted murder in that:

> "*** he did with the intent to commit the offense of Murder in violation of Section 9—1a2 of Chapter 38, Illinois Revised Statutes take a substantial step towards the commission of said offense in that he did without lawful justification point a loaded gun at [name of officer] and pull the trigger knowing such acts created a strong probability of death or great bodily harm ***."

Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)) sets forth the crime of attempt:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

The specific offense charged was murder as that crime is defined in section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)):

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> (1) * * *
>
> (2) He knows that such acts create a strong probability of death or great bodily harm ***."

The appellate court rejected defendant's basic contention that a charge of attempted murder cannot be

grounded upon the provisions of section 9—1(a)(2). The appellate court did, however, hold that an indictment is invalid if it charges the crime in the terms of section 9—1(a)(2) and fails to exclude the phrase "or great bodily harm." We do not agree with the latter holding.

The offense of attempt requires the intent to commit a specific offense. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a).) Thus, the offense of attempted murder requires the specific intent to commit murder. (*People v. Viser* (1975), 62 Ill. 2d 568.) There is authority which holds that the specific intent required cannot be inferred from the overt acts of the defendant. "It is not enough for such a crime that the defendant's conduct create a high degree of risk of death, or of great bodily harm; he must actually intend to cause the specific result required by the statute." (LaFave & Scott, Criminal Law, sec. 81, at 607 (1972).) According to this authority, although a defendant may be guilty of the crime of murder if death ensues, he may not be found guilty of attempted murder for the same conduct if death is not the result.

This court has not followed this rationale but has held that the requisite intent to take a life may be inferred from the nature of the assault and the circumstances surrounding its commission. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578.) The compendious statement of this court in *People v. Coolidge* (1963), 26 Ill. 2d 533, 536-37, illustrates that the law in this area is well established in this State.

"The gist or essence of the crime of assault with intent to murder is a specific intent to take life and such intent must be proved as charged beyond a reasonable doubt. However, since intent is a state of mind, and, if not admitted, can be shown only by surrounding circumstances, it has come to be recognized that an intent to take life may be inferred from the character of the assault,

the use of a deadly weapon and other circumstances. (*People v. Shields,* 6 Ill. 2d 200; *People v. Bashic,* 306 Ill. 341.) It is not requisite or necessary that the party charged should have brooded over the intent, or entertained it for any considerable time, but it is enough if at the instant of the assault he intended to kill the party assaulted, or it will be enough if he is actuated in making the assault by wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstance that, if death had ensued, the killing would have been murder. (*People v. Carter,* 410 Ill. 462; *Crowell v. People,* 190 Ill. 508.) As was pointed out in both *People v. Shields,* 6 Ill. 2d 200, and *Weaver v. People,* 132 Ill. 536, since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended. And while some writers and early cases cited to us by the defendant, (*e.g.,* Perkins on Criminal Law, chap. 6, sec. 7; 61 Col. L. Rev. 571; *Scott v. State,* (1886,) 49 Ark. 156; *White v. State,* (1882,) 13 Tex. App. 259,) have been critical of the view which permits specific intent to be inferred from the presumption that a man intended the natural and probable consequences of his voluntary act, this court, where the facts have justified its application, has consistently aligned itself with those jurisdictions adhering to the doctrine. *People v. Hawes,* 8 Ill. 2d 501; *People v. Shields,* 6 Ill. 2d 200; *People v. Carter,* 410 Ill. 462; *People v. Herbert,* 340 Ill. 320;

*People v. Haskins,* 337 Ill. 131; *People v. Bashic,* 306 Ill. 341; *Crowell v. People,* 190 Ill. 508; *Crosby v. People,* 137 Ill. 325; *Weaver v. People,* 132 Ill. 536."

Section 9—1(a)(2) is a codification of cases of the type cited above. It encompasses situations where subjective intent to kill may be lacking, but where the defendant intentionally, and with disregard to the consequences, performs acts of obvious danger to another's life. (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 8, 10 (Smith-Hurd 1972).) The appellate court was thus correct in determining that section 9—1(a)(2) describes an intentional killing and in holding that a person may commit attempted murder in violation of that provision.

We cannot, however, agree that the indictment was rendered invalid by stating the charge in the statutory terms without excising the phrase "or great bodily harm." In section 9—1(a)(2) the phrase "or great bodily harm" is not to be read separate and apart. The entire sentence must be taken together to connote the serious nature of the act, the commission of which, if death results, constitutes the crime of murder. Acts that fall within section 9—1(a)(2) are those the natural tendency of which is to destroy another life. (*People v. Davis* (1966), 35 Ill. 2d 55; *People v. Latimer* (1966), 35 Ill. 2d 178.) Thus, if an assailant fires a pistol at a person, he knows that his act, if the bullet strikes a vital organ, creates a strong probability of death or, if it does not strike a vital organ, the act at least creates a strong probability of great bodily harm.

Here, the indictment simply alleged that the defendant, with intent to murder and without legal justification, pointed a loaded pistol at a police officer and pulled the trigger "knowing such acts created a strong probability of death or great bodily harm." We do not consider this indictment susceptible to the interpretation placed upon it by the appellate court, that the charge could be sustained

upon proof that the defendant only knew his acts created a strong probability of great bodily harm. Nor do we consider that the defendant could have been misled by the indictment or unaware of the precise offense with which he was charged. The allegations in the indictment that defendant had the intent to commit murder and that he knew his actions created a strong probability of death clearly indicate that the phrase "or great bodily harm" is used in connection with the attempted taking of another's life through intentional, dangerous conduct performed with disregard of the probable consequences. The indictment clearly stated the mental element required by section 9—1(a)(2) and the specific acts from which the intent derived. (*People v. Grieco* (1970), 44 Ill. 2d 407, 409.) We find no error in the present indictment and, therefore, hold that it was valid.

Defendant raises two additional issues which were not passed upon by the appellate court. Defendant contends that People's instruction No. 15 improperly instructed the jury on the question of intent. The instruction was a verbatim restatement of section 9—1(a)(2). The instruction read: "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or great bodily harm to that individual."

As the appellate court noted in a footnote to its opinion (38 Ill. App. 3d 1051, 1058 n.6), we have held that it is not error to give an instruction which defines the specific offense in an attempted murder case (*People v. Koshiol* (1970), 45 Ill. 2d 573, 579), provided the felony murder definition of section 9—1(a)(3) is omitted. (*People v. Viser* (1975), 62 Ill. 2d 568, 582.) We adhere to these holdings and find no error in the instant instruction.

Again, the defendant contends that the reference to great bodily harm in the instruction would allow conviction upon a finding that defendant only knew that his acts created a strong probability of great bodily harm. As

previously stated, we do not consider the language of section 9—1(a)(2) susceptible to such an interpretation. The clear import of the statutory language is that one commits murder if he performs acts from which death ensues, knowing that either death or great bodily harm would most probably result. Where a defendant has the intent to commit murder and knowingly and intentionally creates such a probability the mental state necessary for attempted murder is satisfied. The giving of State's instruction No. 15 thus did not improperly instruct the jury on the issue of intent.

Defendant's final contention is that the circuit court committed prejudicial error by refusing to allow three psychiatrists to testify for the defense. The three psychiatrists had examined the defendant prior to trial in order to determine his sanity and fitness to stand trial. The psychiatrists unanimously concluded that the defendant was competent to stand trial and was not legally insane. The defense contends, however, that the expert witnesses would have testified that the defendant was suicidal at the time of the incident in question, and that their testimony would support his position that he lacked the intent to kill. This does not necessarily follow. Even if defendant was motivated by suicidal tendencies, it would not negate an intent to commit murder manifested by his actions of twice attempting to discharge a loaded pistol pointed at a police officer.

The crucial inquiry in this case was not, as the defense contends, the defendant's subjective state of mind on the night in question. Rather, the determinative issue was whether the defendant pulled the trigger of the pistol, as the police officer testified, or whether he operated the weapon in a manner which precluded its firing, as defendant testified. The psychiatric testimony would not have negated an element of the State's case and would not have raised a statutory defense of insanity (Ill. Rev. Stat. 1975, ch. 38, par. 6—2). We therefore hold that the trial

court did not err in excluding the proffered psychiatric testimony.

Therefore, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.
*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE MORAN, dissenting:

The appellate court, in its well. reasoned opinion, answers the questions raised by the indictment in this case, expresses my views (including the suggested instruction to the jury contained in footnote 6), and I adopt it as my dissent.

MR. JUSTICE GOLDENHERSH joins in this dissent.