THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES SINNOT, Plaintiff in Error.

*Opinion filed June 22, 1916.*

1. CRIMINAL LAW—*when instruction may require jury to find accused guilty of murder.* An instruction in a murder trial may direct the jury to find the accused guilty of murder without leaving them free to find him guilty of manslaughter, where it recites every essential element necessary to constitute the crime of murder and directs the jury to find the accused guilty of murder if they believe the facts recited to have been proved beyond a reasonable doubt.

2. SAME—*when instruction as to self-defense is not erroneous.* An instruction stating that before the accused can avail himself of the right of self-defense it must appear that at the time of and immediately before the killing the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the deceased was absolutely necessary or apparently necessary, and that the deceased was the first assailant or that the accused had in good faith endeavored to decline further struggle before the mortal shot was fired, is not erroneous as ignoring apparent danger and requiring it to be actual, urgent and pressing. (*Davison* v. *People,* 90 Ill. 221, followed.)

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

FOWLER & DUTY, for plaintiff in error.

P. J. LUCEY, Attorney General, ED. M. SPILLER, State's Attorney, and GEORGE P. RAMSEY, for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

James Sinnot was found guilty of murder, in the circuit court of Williamson county, and sentenced to serve a term of fourteen years in the penitentiary. He has brought the record of the circuit court here for review by writ of error and urges that the verdict is contrary to the evidence and that the court erred in the giving and refusing of instructions.

On August 11, 1914, plaintiff in error shot and killed Mike Papandrea on a street in the village of Colp, in Williamson county. Plaintiff in error and the deceased were both natives of Italy and were employed as miners at the mine known as Madison No. 9, located at the village of Colp. Plaintiff in error did not deny the killing but claimed it was done in self-defense. It is quite apparent from the evidence that ill-feeling had existed between plaintiff in error and the deceased and that deceased had made threats against the life of plaintiff in error; that plaintiff in error, knowing of these threats, not only did not seek to avoid the deceased but sought him out, and on one occasion shortly before the homicide invited deceased to go out on the street with him, apparently to settle their difficulties, which the deceased refused to do. On the day of the homicide the deceased made the statement that unless plaintiff in error paid him $2.20 that day, which he claimed plaintiff in error owed him, he intended to kill him. Plaintiff in error was informed of the making of this threat, and shortly after it was made, and while standing in the street, according to his own testimony, he was cautioned by a friend to be careful,—that the deceased was coming toward him,—to which he responded, "Let him come." The deceased approached, and after a brief conversation with the plaintiff in error pistols were drawn, plaintiff in error firing three shots and the deceased two. Papandrea fell where he stood and died within a few moments and plaintiff in error ran away.

The testimony of the eye-witnesses to the shooting is conflicting. Of the witnesses who testified on behalf of the People, two stood talking together about one hundred feet away. One of these testified that he heard three shots, looked up and saw plaintiff in error running away; that Papandrea fell, then took his pistol from his side and fired two shots at plaintiff in error. The other testified that he was looking directly toward plaintiff in error and deceased

when the shooting began; that plaintiff in error fired three shots, Papandrea fell, then pulled his pistol from his pocket and fired two shots at the plaintiff in error. Two others were standing between three hundred and four hundred feet away. Each of them testified that he heard three shots, then looked up, saw plaintiff in error run away and Papandrea fall; that after he fell Papandrea raised up and fired two shots. One witness called on behalf of plaintiff in error testified that he was within fifteen or twenty feet of the parties when the shooting occurred and that he saw all that happened; that plaintiff in error shot Papandrea; that Papandrea fell and then pulled his pistol from his pocket and fired two shots. On the other hand, plaintiff in error and two witnesses who were within fifteen feet when the shooting occurred, testified that Papandrea pulled his gun from his pocket; that it was set on safety and he was unable to fire it although he attempted to do so; that plaintiff in error then drew his pistol from his pocket, fired three shots at Papandrea, who fell, and who then fired two shots at plaintiff in error as he ran away. Another witness called on behalf of plaintiff in error testified that he also was about ten or fifteen away, and that when plaintiff in error fired, Papandrea had his hand in his pocket, but later in his examination witness said that he did not see whether deceased pulled his pistol out before or after he was shot. Plaintiff in error ran from the scene, throwing his pistol away as he ran. When he had gone about a quarter of a mile one of the officials of the village halted him and placed him under arrest. The officer asked him where his gun was, and he replied that he never had one.

The jury were fully and correctly instructed as to the law of self-defense and as to the right of plaintiff in error to protect himself and defend against any assault with which he was threatened. If plaintiff in error and the two witnesses who corroborated him were telling the truth, then the jury should have found that the killing was justified,

On the other hand, if the witnesses on behalf of the People and the one witness called on behalf of plaintiff in error who stated that plaintiff in error fired before any assault was made or threatened against him testified to the truth, then the jury were justified in finding the plaintiff in error guilty of murder. This is a case where it was peculiarly the province of the jury to determine the weight and credibility to be given to the evidence of the various witnesses. We are unable to say from this record that the verdict of the jury finding the defendant guilty of murder was contrary to the evidence.

Two of the instructions given on behalf of the People told the jury, in substance, that if they believed from the evidence, beyond a reasonable doubt, that the plaintiff in error unlawfully, feloniously and with malice aforethought caused the death of Papandrea, then he is guilty of murder and the jury should so find. It is insisted that these instructions are erroneous, for the reason that they did not leave the jury free to return a verdict of manslaughter should the evidence disclose mitigating circumstances sufficient to reduce the killing to that crime. These instructions recited every essential element necessary to constitute the crime of murder and directed the jury to find the defendant guilty of murder if they believed the facts recited to have been proved beyond a reasonable doubt. It was not error to give them. *Crowell* v. *People,* 190 Ill. 508; *Carle* v. *People,* 200 id. 494; *Kyle* v. *People,* 215 id. 250; *Koser* v. *People,* 224 id. 201; *Bleich* v. *People,* 227 id. 80; *People* v. *Terrell,* 262 id. 138.

The twenty-first instruction given on behalf of the People was as follows:

"The jury are instructed that before the defendant, James Sinnot, can avail himself of the right of self-defense it must appear that at the time and immediately before the killing the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily

harm the killing of the deceased, Mike Papandrea, was absolutely necessary or apparently necessary, and it must also appear that the deceased, Mike Papandrea, was the first assailant, or that the defendant, James Sinnot, had in good faith endeavored to decline further struggle before the mortal shot was fired."

It is insisted that this instruction in effect tells the jury that the danger must be actual, urgent and pressing before one is warranted in acting in self-defense, whereas, under the law, there need not have been any real danger at all, but it is sufficient if plaintiff in error in good faith believed there was danger of losing his life or receiving great bodily harm. Instruction No. 22 contained the same language complained of in instruction No. 21. In *Davison* v. *People,* 90 Ill. 221, an instruction almost in the exact language of People's instruction No. 21 was approved. That case has been consistently followed, and under that holding these instructions were properly given.

Complaint is made that the court erred in refusing to give instructions numbered 1 and 3 offered on the part of plaintiff in error. These instructions were drawn to state the law of self-defense. The jury were instructed correctly and fully as to the law of self-defense, and the portions of the refused instructions which were proper to be given were amply covered by the instructions given. They were therefore properly refused.

Complaint is made of the modification of plaintiff in error's instruction No. 2. The abstract does not disclose that the court made any modification of this instruction and it appears to have been given as asked.

There being no error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*