THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR A. ROBERTS, Impleaded, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER L. GRIZZLE, Defendant-Appellant.

Fourth District   Nos. 13276, 13826, 14187 cons.

Opinion filed January 20, 1978.

Richard J. Wilson, Barbara A. Chasnoff, and Edward R. Green, all of State Appellate Defender's Office, of Springfield, for appellant Arthur A. Roberts.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant Chester L. Grizzle.

Roger W. Thompson, State's Attorney, of Lincoln, and Lee J. Plummer, State's Attorney, of Jerseyville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

The three cases before us concern the common question of whether an individual who without actual intent to kill commits an unjustified act knowing that the act creates a strong probability of killing another is guilty of attempt murder when death does not result from his acts.

Two related questions are involved: (1) Is an allegation that with the intent to commit murder, but not killing anyone, a person acted as described in section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(2)) sufficient to charge the offense of attempt murder? (2) In an attempt murder case, are jury instructions proper which describe the commission of attempt murder in terms of section 9—1(a)(2) conduct done with the intent to commit murder but not resulting in death?

Section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) defines the offense of attempt as follows:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

Section 9—1(a) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)) defines murder:

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>> (2) He knows that such acts create a strong probability of

> death or great bodily harm to that individual or another; or
> (3) He is attempting or committing a forcible felony other
> than voluntary manslaughter."

Any attempt to answer the questions at issue requires an examination of three recent supreme court decisions, *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903, *People v. Muir* (1977), 67 Ill. 2d 86, 365 N.E.2d 332, and *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888. All of these cases concerned appeals from attempt murder convictions.

In *Viser*, the court held to be erroneous instructions which stated that the prosecution was required to prove beyond a reasonable doubt that, with intent to commit murder, the defendant took a substantial step towards committing murder. The instructions then defined murder as any of the three types of conduct listed in the disjunctive in section 9—1(a). The court ruled that this improperly permitted the jury to find the defendant guilty by reason of his participation in a forcible felony as described in section 9—1(a)(3) but without any actual intent to kill anyone. The rationale of the ruling was that without an intent to kill, there could be no attempt murder for "[t]here is no such criminal offense as an attempt to achieve an unintended result." (62 Ill. 568, 581, 343 N.E.2d 903, 910.) The court expressly refrained from ruling upon the sufficiency of the charge which listed the substantial step towards the commission of the offense as any of the three types of conduct listed in the disjunctive in section 9—1(a). The opinion made no reference to any error in the provision of the instruction defining murder which would have permitted the conviction of the defendant for engaging in section 9—1(a)(2) conduct.

The relationship between section 9—1(a)(2) conduct and the offense of attempt murder was dealt with extensively in *Muir*. There the indictment stated in significant part that the accused committed the offense of attempt murder in that:

> "[H]e did with the intent to commit the offense of Murder in violation of Section 9—1a2 of Chapter 38, Illinois Revised Statutes take a substantial step towards the commission of said offense in that he did without lawful justification point a loaded gun at [name of officer] and pull the trigger knowing such acts created a strong probability of death or great bodily harm * * *." (67 Ill. 2d 86, 90, 365 N.E.2d 332.)

Neither the supreme court opinion in *Muir* nor that of the appellate court from which leave to appeal had been granted (38 Ill. App. 3d 1051, 349 N.E.2d 423) set forth all of the instructions given concerning the mental state of the accused required to be proved in order to convict, but the supreme court opinion stated that the elements of the offense of murder were defined to the jury in the language of section 9—1(a)(2).

The supreme court ruled that the allegation in the charge stating that

defendant knew that his conduct created a strong probability of causing *death or great bodily harm* should be construed as if the italicized portion was stated *death or death and great bodily harm,* thus avoiding an attempt murder conviction for an ordinary aggravated battery. The court also extensively discussed the question at issue here of whether conduct performed without actual intent to kill but committed with a knowledge that it created a strong probability of causing death or great bodily harm supports a conviction for attempt murder. The court concluded that it did because, although section 9—1(a)(2) does not describe a "subjective intent to kill" (67 Ill. 2d 86, 93, 365 N.E.2d 332, 335), it describes conduct of such a malicious nature that the intent to kill is implied. The opinion relied upon comments of the committee drafting the Criminal Code of 1961 (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 8—10 (Smith-Hurd 1972)) and cases holding that proof of conduct described in section 9—1(a)(2) is sufficient proof of an intent by the actor to kill. The court disagreed with a statement in LaFave and Scott, Handbook on Criminal Law §81, at 607 (1972), that conduct by an accused known by him to create a high risk of death, although sufficient as an ultimate fact to support a murder conviction, is not sufficient to support an attempt murder conviction.

A few months after *Muir,* the supreme court decided *Trinkle.* There the indictment charged:

> " 'David Francis Trinkle committed the offense of ATTEMPT (MURDER) in that said defendant did perform a substantial step toward the commission of that offense in that he did without lawful justification shoot Gayle Lane with a gun knowing that such act created a strong probability of death or great bodily harm to Gayle Lane or another * * *.' " 68 Ill. 2d 198, 199-200.

The jury was instructed:

> " 'A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.
>
> The crime attempted need not have been committed.'
>
> 'A person commits the crime of murder who kills an individual if, in performing the acts which cause the death he knows that such acts create a strong possibility of death or great bodily harm to that individual or another.' 68 Ill. 2d 198, 200.
>
> 'To sustain the charge of attempted murder, the State must prove the following propositions:
>
> First: That the defendant performed the acts which caused the injury of Gayle E. Lane;
>
> Second: That when the defendant did so, he knew that his act

created a strong probability of causing death or great bodily harm to Gayle E. Lane, or another;

Third: That the defendant was then capable of acting knowingly and intentionally. * * *' " 68 Ill. 2d 198, 200.

The *Trinkle* opinion stated:

"The State would urge that actual intention to kill is not a requisite mental state for attempted murder, and it suffices so long as the accused acted with such disregard of human life knowing his conduct created a strong probability of bodily harm.

Here, under the terms of the indictment as well as the instructions, the jury could have found the defendant guilty of attempted murder sans specific intent to kill. So long as he shot a gun 'knowing such act created a strong probability of death or great bodily harm to Gayle Lane or another,' the defendant could be guilty of attempted murder. But the General Assembly has exacted that the defendant must be guilty of an action 'with intent to commit a specific offense' (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)), namely, to kill. Hence the indictment and the instructions did not meet the criterion of the law. It is not sufficient that the defendant shot a gun 'knowing such act created a strong probability of death or great bodily harm to Gayle Lane or another.' If this were the test, then a defendant who committed a battery with knowledge that such conduct could cause great bodily harm would be guilty of attempted murder. But, in law, he would be guilty of aggravated battery, a completely different offense with a different penalty." 68 Ill. 2d 198, 201, 369 N.E.2d 888, 890.

The opinion cited with approval a statement in LaFave and Scott, Handbook On Criminal Law §59, at 428-29 (1972), pointing out that although murder may be committed without a specific intent to kill, the offense of attempt murder may not be committed without the actor's intent to bring about the result of murder, death.

The situation in *Trinkle* differed from that in *Muir* and *Viser* in one respect that must be considered. In *Trinkle*, neither the charge nor the instructions made reference to an intent to commit murder on the part of the defendant. The charge in both *Muir* and *Viser* alleged that the defendant acted with the intent to commit murder. Instructions in *Viser* required proof that the defendant had done so in order to convict. We cannot tell from the *Muir* opinion whether the instructions there had a similar provision but we assume they did because of the way the charge was stated. We do not consider these differences to explain the difference in the outcome of the cases. If a statement that a person acted with the intent to commit murder is taken as a statement that the person acted with

an intent to kill, it is very confusing to describe the substantial step towards the commission of the attempt as section 9—1(a)(2) conduct because, if the actor had the intent to kill, his mental state in performing the substantial step would be that described in section 9—1(a)(1) (intentional killing). The requirement in the *Viser* instruction that the jury find that the accused acted with intent to commit murder did not save the instruction there which included the section 9—1(a)(3) (felony murder) conduct as a type of murder that the jury could find the accused guilty of having attempted. Similar wording would not have saved the *Trinkle* instruction either.

In *Muir*, the supreme court relied heavily upon its decisions in *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, and *People v. Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694. In those cases it ruled that the commission of unjustified acts which the actor knows to create a strong probability of causing death is conduct of such a malicious nature that a trier of fact can infer that the actor intended to kill. The *Coolidge* court had noted that a sane person is presumed to intend the probable consequences of his deliberate acts. The effect of *Muir* was a rule that in attempt murder cases the existence of section 9—1(a)(2) conduct was not merely evidence from which a trier of fact might infer an intent to kill but was the ultimate fact of an intent to kill. *Muir* made the *Koshiol-Coolidge* inference conclusive. In *Trinkle*, on the other hand, the court stated directly that the existence of the ultimate fact of the accused shooting a gun knowing of the strong probability that the shot would cause death was not the equivalent of the ultimate fact that the accused intended to kill.

We do not deem *Trinkle* to be inconsistent with the ruling in *Koshiol* and *Coolidge* that evidence of section 9—1(a)(2) conduct may be proof of intent to kill. We do consider *Trinkle* to be inconsistent with the ruling in *Muir* that a statement in a charge of attempt murder that the defendant engaged in 9—1(a)(2) conduct is a sufficient allegation of an intent to kill and that the jury may be properly instructed that the accused should be convicted if proved beyond a reasonable doubt to have engaged in that type of conduct. We conclude, as did the Appellate Court for the Third District in *People v. Shields* (1977), 54 Ill. App. 3d 1020, 370 N.E.2d 654, that *Trinkle* overruled *Muir* and is the controlling precedent.

■■ We accordingly conclude that as a result of *Trinkle*: (1) one who without actual intent to kill, commits an unjustified act which he knows to create a strong probability of death to another is not guilty of attempt murder, (2) an allegation that a person, with the intent to commit murder, committed conduct described in section 9—1(a)(2) which did not result in death is insufficient to charge attempt murder, and (3) instructions which describe the commission of attempt murder in terms of section 9—1(a)(2) conduct done with the intent to commit murder are erroneous.

We now must apply these principles to the cases before us. Two defendants are involved, Arthur A. Roberts and Chester L. Grizzle. Roberts was convicted in the circuit court of Logan County of the offense of attempt murder and Grizzle was convicted in the circuit court of Jersey Count of that offense. In Case No. 13276, Roberts appeals his conviction and sentence to 15 to 45 years imprisonment. In Case No. 13826, he appeals the dismissal of his subsequently filed post-conviction petition. Those cases were consolidated prior to original oral arguments. After we had filed an opinion, we granted a petition for rehearing. In Case No. 14187, Grizzle appeals the order of the circuit court of Jersey County dismissing his post-conviction petition attacking his attempt murder conviction and sentence of 7 to 40 years imprisonment. Original oral arguments in Grizzle's case were heard at the same time as oral arguments upon the rehearing of the other two cases. On our own motion, we have consolidated the three cases for opinion.

Defendant Roberts was charged with attempt murder in that with the intent to commit murder in violation of section 9—1(a)(2), he performed a substantial step toward committing that offense by aiming and firing a gun at the passenger compartment of a truck "knowing that such acts created a strong probability of death or great bodily harm" to the driver of the truck. The evidence showed that a shot was fired from a car driven by defendant at the door of a truck in an adjacent lane of traffic and that the bullet traveled in the direction of the driver of the truck but did not hit him. The incident occurred after the two vehicles had been jockeying for position for a distance of several miles. Evidence was presented that defendant had made a prior obscene gesture at the truck driver.

Without objection by the defendant, the court gave IPI Criminal Nos. 6.05 and 6.07, which defined the offense of attempt murder and stated the proof which the State was required to make in order to establish the defendant's guilt. As in *Viser* and apparently in *Muir* but not in *Trinkle*, those instructions stated that an intent to commit murder was an element of the offense. Neither instruction defined or listed the elements of the offense of murder. That information was submitted by IPI Criminal No. 7.01, which was also given without objection and stated:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

(1) He intends to kill or do great bodily harm to that individual; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual."

■■ As we have previously stated, we believe *Trinkle* to be the controlling precedent and we interpret it to hold that attempt murder instructions which define the murder attempted in the language of section 9—1(a)(2) are erroneous even if the instructions are phrased in such

language that the jury is told that the State must prove that the accused acted with an intent to commit murder. We realize that the propriety of these instructions is raised for the first time on appeal and that the issue involved has only recently received careful scrutiny. The giving of the instructions was understandable. Under *Trinkle*, however, the defect in the instructions was substantial as they would have permitted a conviction of the defendant without his having had the required actual intent to kill. We deem the error not to have been waived (Ill. Rev. Stat. 1975, ch. 110A, par. 451(c)) and to require reversal. *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.

■■ Other claims of error cited by defendant Roberts involve circumstances that are not likely to arise in a subsequent trial for the same offense. We need not discuss them. We also need not discuss his contention in Case No. 13826, the appeal from the denial of his post-conviction petition. In reversing his conviction and sentence we are granting him all the relief he could gain in the post-conviction proceeding. Therefore, the issues raised there are moot. We dismiss that appeal.

The substance of the attempt murder charge against Chester L. Grizzle was that with intent to commit murder "in violation of Section 9—1(a)(2)" he shot bullets into the residence of an individual knowing that his acts created a strong probability of death or great bodily harm to those inside the house. The jury was instructed as to the nature of the offense of attempt and that to prove the offense the State must prove that with the intent to commit murder, the defendant performed a substantial step toward the commission of the offense. A given instruction defining murder included in the alternative mental states for the offense, knowledge "that such acts create a strong probability of death or great bodily harm" to the victim. No objections were made to those instructions and neither that question nor a question on the sufficiency of the charge was raised in a direct appeal by that defendant to this court. In *People v. Grizzle*, General No. 12680, we affirmed the conviction by an order entered December 10, 1975, pursuant to Supreme Court Rule 23 (Ill. Rev. Stat. 1975, ch. 110A, par. 23).

On May 5, 1976, defendant Grizzle filed a pro se petition for post-conviction relief in the trial court upon the basis that he had received ineffective representation at trial. On May 17, counsel was appointed for defendant. A hearing on the petition was held on November 30, 1976. At that hearing, the appointed counsel told the court that he had not been able to find any support for the defendant's allegations of lack of effective counsel. The appellate court opinions in *Muir* and *Trinkle* had been filed prior to the hearing. No amendment was attempted to be made to the post-conviction petition to question the validity of the charge or

instructions. On December 8, 1976, an order was entered denying the prayer of the petition.

The collateral attack upon a conviction provided for in the post-conviction procedure set forth in sections 122—1 through 122—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, pars. 122—1 through 122—7) is stated in section 122—1 to be applicable only if a "substantial denial" of a defendant's constitutional rights is shown to have occurred. The charge and instructions in the Grizzle case are substantially the same as those in the Roberts case and contain the same errors we discussed there. Defendant Grizzle does not strenuously argue that the insufficiencies of the charge can now be raised for the first time on appeal of the post-conviction petition. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.) He does strongly argue that the error in the instructions was of constitutional dimensions. He relies upon the recent supreme court decision in *People v. Jenkins* (1977), 69 Ill. 2d 61, 65-67, 370 N.E.2d 532, 533-35. The court there ruled in an attempt murder case that the trial court's submission to the jury of contradictory instructions, one of which erroneously omitted reference to proof of lack of justification for the act intended, was reversible error which, under Supreme Court Rule 451(c) was not waived by failure to object at trial. The opinion stated that where instructions are contradictory, "the jury cannot perform its constitutional function." The defendant maintains that the court was ruling the error to be of constitutional magnitude and contends that the error here was equally as great.

One claim of deprivation of constitutional right has been made by defendant throughout the post-conviction proceedings. He has consistently complained that he was deprived of his right to effective assistance of counsel. We find no support for this in the record. In view of the relatively recent focus that has been placed upon the question of the required mental state for the offense of attempt murder and the lack of uniformity of the rulings of the courts of review, we cannot find the failure of counsel to earlier raise the issues of the instructions or the charge to be incompetence.

Before we decide the magnitude of the error on the instructions, we must also discuss another hurdle which defendant Grizzle must cross before he can raise the issue of the instructions. In post-conviction proceedings, after a direct appeal from a conviction, the decision of the reviewing court is ordinarily *res judicata* as to all issues decided by the reviewing court and as to all issues which could have been raised upon the appeal but were not. (*People v. James* (1970), 46 Ill. 2d 71, 263 N.E. 2d 5.) In addition, section 122-3 provides that issues not raised in an original or amended post-conviction petition are waived upon appeal from a ruling

on that petition. If fundamental fairness so requires, however, the waiver rules are themselves waived both as to questions that could have been raised on direct appeal (*People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E. 2d 25; *People v. Hamby* (1965), 32 Ill. 2d 291, 205 N.E. 2d 456) and as to issues not raised in the original or amended post-conviction petition. (*People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E. 2d 710.) We conclude that because of the recent focus of the law on the question of the mental state involved in attempt murder and the differing decisions made by the various courts of review, fundamental fairness requires that no waiver of the instruction issue be invoked.

■■ The majority of the panel agrees with defendant and concludes that the error in instructions was of such magnitude as to deprive defendant of fundamental fairness, not merely in the sense that issues were not waived, but in the constitutional sense as well. (See *Kinsella v. United States* (1960), 361 U.S. 234, 4 L. Ed. 2d 268, 80 S. Ct. 297.) They consider defendant Grizzle to be entitled to the same relief as defendant Roberts.

The majority also notes that post-conviction relief under sections 122—1 through 122—7 (Ill. Rev. Stat. 1975, ch. 38, pars. 122—1 through 122—7) has not always been limited to cases where a defendant has been deprived of constitutional rights. (*People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1; *People v. Russo* (1972), 52 Ill. 2d 425, 288 N.E.2d 412; *People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679; *People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852.) They consider the theory of fundamental fairness, even if not of constitutional dimensions, to require granting defendant Grizzle a new trial.

The writer would limit post-conviction relief under sections 122—1 through 122—7 to cases where a defendant had been deprived of constitutional rights. In *Jenkins*, as we have done in the direct appeal of defendant Roberts, the supreme court ruled that, pursuant to Rule 451(c), the interests of justice required that the issue of an erroneous instruction not be waived. The writer considers such a ruling on direct appeal to present a far different situation than permitting a collateral attack upon the conviction. He agrees that the jury functions by constitutional mandate and notes that many trial errors infringe upon the jury's ability to perform its function. He does not interpret *Jenkins* to indicate that such errors become constitutional errors. In *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416, error in defining the term reasonable doubt was ruled not to breach a constitutional right of the accused. Thus, although the writer agrees that fundamental fairness requires that the instruction issue not be ruled to have been waived, he does not apply that phrase in the constitutional sense. He does not consider the error in the instruction to have deprived defendant of a constitutional right at trial nor does he

deem defendant Grizzle constitutionally entitled on collateral attack to the same relief given defendant Roberts on direct appeal.

In Case No. 13276, *People v. Roberts,* we reverse the conviction and remand the case to the circuit court of Logan County. The appeal in Case No. 13826, *People v. Roberts,* is dismissed as moot. The order appealed in Case No. 14187, *People v. Grizzle,* is reversed and the case remanded to the circuit court of Jersey County with directions that the prayer of the post-conviction petition be granted setting aside defendant Grizzle's conviction and sentence and awarding him a new trial.

CRAVEN and REARDON, JJ., concur.