THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGELIO TAMAYO, Defendant-Appellant.

Second District   No. 76-257

Opinion filed January 20, 1978.

Ralph Ruebner, Daniel Cummings, and Peter Nolte, all of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered opinion of the court:

Rogelio Tamayo (hereinafter "defendant") was indicted for one count of attempt murder and two counts of aggravated battery in Winnebago County. Judge John Ghent, after a fitness hearing, found the defendant fit to stand trial. Following a jury trial the defendant was found guilty of both attempt murder and one count of aggravated battery. Defendant was sentenced on the attempt murder conviction to a four- to six-year term and was given no sentence on the aggravated battery conviction. Defendant appeals.

Defendant is from Guantanamo, Cuba, and speaks English very poorly but is able to understand Spanish on a below-average level. In November of 1974, he was admitted to the Rockford Memorial Hospital detoxification unit after he was found intoxicated, lying in the snow. He was transferred to the Singer Zone Center for approximately one month and then was sent to the Bridgeway Halfway House (hereinafter "Bridgeway") where the above offense occurred. Bridgeway is under the Division of Vocational Rehabilitation (hereinafter "DVR"), and among the requirements as a resident there, the defendant was expected to attend Alcoholics Anonymous meetings, learn English, and prepare for a trade. The DVR withdrew its support for the defendant's continued stay at Bridgeway due to his lack of cooperation.

Defendant's supervisor, Dan Spiro, testified that on June 4, 1975, he informed the defendant that he would have to find a job by June 15 and that a job interview had been arranged for him. Defendant, in his testimony, denied that a job interview had been arranged for him. Defendant further testified that later on June 4, after drinking some beer, he returned to Bridgeway and again saw Spiro who told him to take a walk and refresh himself. Spiro testified he did not see the defendant again until early the next morning. The defendant testified that he walked the streets of Rockford all night and that upon his return to Bridgeway at 10:30 the next morning, all his bags had been packed and his supervisor, Spiro, refused his request to remain any longer at Bridgeway.

Spiro and the defendant then had lunch together that afternoon with no apparent incident. At approximately 3:30 that afternoon, however, Spiro went into the dining room for a cup of coffee, and the defendant mentioned to him that a cool breeze was blowing through the dining

room. As Spiro started to leave the dining room, the defendant called him back, and when Spiro walked within a few feet of the defendant, the defendant shot him in the chest and arm. The defendant testified that he had shot Spiro only after Spiro denied him permission to stay just a couple more days. The police arrived and arrested the defendant without further incident.

On appeal the defendant has presented numerous issues for our determination. However, in light of our disposition of this appeal, we will consider only the issue concerning the trial court's determination of the defendant's fitness to stand trial and other matters which may possibly re-occur during the course of a retrial of this cause.

At the fitness hearing in the instant case, two experts testified for the defense—Dr. J. G. Graybill, a psychiatrist, and Dr. Thomas Eliseo, a clinical psychologist. Dr. Graybill testified that the defendant's intelligence was minimal and that he did not understand the nature of the charges placed against him nor was he able to assist in his defense. The doctor further stated that the defendant was psychotic and mildly paranoid. Dr. Eliseo testified that the defendant was withdrawn, passive, of below-average intelligence, uncertain of himself and that he had trouble making decisions. Neither Dr. Graybill nor Dr. Eliseo spoke Spanish fluently, and both indicated that the defendant should also be examined by a psychiatrist or psychologist fluent in Spanish.

Dr. Enrique Martinez, a psychiatrist who spoke Spanish fluently, testified for the State that the defendant was capable of understanding the nature of the charges against him, the purpose for which he was standing trial, and that he was able to assist in his defense. Dr. Martinez, who had known the defendant for six months prior to this incident and who had counselled him weekly for nearly three months, testified that the defendant was not psychotic, but bashful and insecure. The doctor also testified that the defendant would not trust his attorney at first, but would probably come around to trusting him over a period of time.

In his original brief, the defendant contends that the trial court's adjudication of fitness was against the manifest weight of the evidence and that the State failed to meet its burden of proving the defendant fit to stand trial. As an additional issue filed subsequent to the publication of *People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307, defendant has raised the point that the trial court was obliged to and did not apply the standard that "where a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the State, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial." 66 Ill. 2d 306, 314, 362 N.E.2d 307, 311.

In citing another additional authority subsequent to oral argument and the filing of *People v. Harris* (1977), 53 Ill. App. 3d 868, 369 N.E.2d 152,

defendant contends this case should be remanded for a new fitness hearing, since it is not apparent from this record under which standard the defendant was found fit to stand trial.

In *Harris* and the recent opinion of *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909, the First District determined that the misallocation of the burden of proof in a hearing to determine the defendant's fitness to stand trial constituted a denial of due process and was reversible error. In addition, in both *Harris* and *Hubert*, the causes were reversed and remanded for a new trial on the condition that the defendant is found fit for trial.

Both the *Harris* and *Hubert* opinions were primarily based on *People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97, wherein our supreme court held that where the trial court had improperly placed the burden of proof on the defendant to prove his unfitness, the judgment should be reversed. *Thompson* was the law in Illinois prior to the enactment of section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(i)), which placed the burden of proof on the defendant to prove his unfitness where he has raised the issue. In *McCullum* our supreme court, in discussing the evolvement of this statute which it found unconstitutional, noted that:

> "Prior to the enactment of section 5—2—1(i), this court consistently held that once evidence indicating unfitness was brought by the defense, the burden devolved upon the State to establish by a preponderance of the evidence that defendant was fit to stand trial. (*People v. Thompson* (1967), 36 Ill. 2d 332, 334-45; *People v. McKinstray* (1964), 30 Ill. 2d 611, 616-17; *People v. Bedford* (1964), 31 Ill. 2d 227, 228-29; *People v. Bender* (1960), 20 Ill. 2d 45, 53-54.) This court has held that erroneous instructions with regard to the allocation of the burden of proof constituted a denial of due process. (*People v. Thompson* (1967), 36 Ill. 2d 332, 334-45; *People v. Bedford* (1964), 31 Ill. 2d 227, 228-29; *People v. Bender* (1960), 20 Ill. 2d 45, 54-53.)
>
> > '*It would be a strange rule, indeed, to impose upon [the defendant] the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof.' (People v. Bender* (1960), 20 Ill. 2d 45, 53-54.)" (Emphasis added.) *People v. McCullum* (1977), 66 Ill. 2d 306, 312-13, 362 N.E.2d 307, 310.

In addition, the court found that:

> "The concept of fitness to stand trial is grounded on the notion that it is fundamental to an adversary system of justice. (*Drope v. Missouri* (1975), 420 U.S. 162, 171-72, 43 L. Ed. 2d 103, 95 S. Ct.

896.) Fundamental fairness dictates that, where a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the State, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial. (See *United States v. DiGilio* (3rd Cir. 1976), 538 F.2d 972, 988.) We find section 5—2—1(i) to be unconstitutional to the extent that it places on the defendant the ultimate burden of proving unfitness to stand trial." 66 Ill. 2d 306, 314, 362 N.E.2d 307, 310-11.

The supreme court's decisions in *McCullum* and *Thompson* acknowledge the extreme deprivation of constitutional rights to which a defendant is subjected by having his fitness for trial determined under an improper standard of proof. This problem has also been recognized by the Fifth District of this court in *People v. Garlick* (1977), 46 Ill. App. 3d 216, 223, 360 N.E.2d 1121, 1126, *cert. denied* (1977), ___ U.S. ___, 54 L. Ed. 2d 484, 98 S. Ct. 620, wherein the court held that it is "inherently unconstitutional to place the burden of proof on the defendant in a hearing to determine his fitness to stand trial." Likewise, our legislature has amended and supplanted section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i)) to reflect the proper judicial standard of determining a defendant's fitness to stand trial. Section 5—2—1(i) now reads:

"Once a bona fide doubt has been raised concerning the defendant's fitness to stand trial or to be sentenced, the burden of proving the defendant is fit is on the State." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i), as amended by Pub. Act 80-889, approved Sept. 21, 1977; effective Oct. 1, 1977.)

Hence, this court is compelled to reverse and remand this cause for a new fitness hearing since it is not apparent on this record under which standard of proof the defendant's fitness to stand trial was determined by the trial court. (*People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97; *People v. Harris* (1977), 53 Ill. App. 3d 868, 369 N.E.2d 152.) In addition, if the defendant is found fit, he is entitled to a new trial. *People v. Harris* (1977), 53 Ill. App. 3d 868, 369 N.E.2d 152; *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909.

■■■ Our review of the record also discloses that only one of the three experts who examined the defendant spoke Spanish fluently. Therefore we direct the trial court on remand to appoint one or two additional psychiatrists fluent in Spanish to examine the defendant and to testify concerning their findings on the defendant's fitness to stand trial, his fitness to be sentenced, and his sanity at the time of this occurrence. *People v. Harris*, 53 Ill. App. 3d 868.

■■ We next consider defendant's contentions concerning the propriety of the attempt murder instructions given in this cause. The trial

court gave IPI Criminal Nos. 6.05 and 6.07, as modified (Illinois Pattern Jury Instructions, Criminal, No. 6.05 and 6.07), which defined the offense of attempt murder and set forth the requisite proof necessary for the State to establish the defendant's guilt. The offense of murder was defined and tendered to the jury by IPI Criminal No. 7.01 (Illinois Pattern Jury Instructions, Criminal, No. 7.01) which provided:

> "A person commits the crime of murder who [without lawful justification] kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or *great bodily harm* to that individual." (Emphasis added.)

Defendant did not object to the giving of these instructions at trial. However, defendant now contends that the above instructions were improper because they permitted the jury to find him guilty of attempt murder, even though the defendant only had the intent to do great bodily harm instead of the intent to kill.

Prior to a discussion of this issue, we must note that it is entirely understandable why this instruction was not objected to in the trial court since the question of the requisite intent for attempt murder has been in somewhat of a judicial hiatus over the last two years while the courts of review determine which is the proper standard. Indeed, our supreme court has filed two recent paradoxical opinions on this same issue in *People v. Muir* (1977), 67 Ill. 2d 86, 94, 365 N.E.2d 332, 336, and *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888. Because *Trinkle* is the later opinion, we deem it to be the controlling precedent on this issue. (*People v. Roberts* (1977), 56 Ill. App. 3d 667, 372 N.E.2d 143.) In *Trinkle* the court held that the requisite mental state for the offense of attempt murder was the intent to kill and that charging documents or instructions which permitted a conviction for this offense where the defendant's mental state was expressed in terms of the knowledge that his " 'acts created a strong probability of death or great bodily harm * * *' " (*People v. Trinkle*, 68 Ill. 2d 198, 201, 369 N.E.2d 888, 890) were erroneous. In the instant case, under the *Trinkle* standard the instructions given clearly were erroneous in that the defendant could be convicted for attempt murder even if he *only* had the knowledge that his acts created a strong probability of death or great bodily harm instead of the proper mental state of an intent to kill. Indeed, the defendant herein has contended that he only meant to scare the complainant Spiro and did not intend to kill him. Accordingly, pursuant to Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)), we take cognizance of the plain error in the instructions—which were not objected to at trial— because of the absolute necessity of having proper issues instructions on all elements of the crime charged. (*People v. Parks* (1976), 65 Ill. 2d 132,

357 N.E.2d 487.) The trial court is directed on remand to instruct the jury on the proper mental state for attempt murder expressed herein, provided, of course, that this issue materializes on retrial.

The convictions of the defendant for aggravated battery and attempt murder are reversed, and the cause is remanded to the circuit court of Winnebago County for a new fitness hearing and further proceedings consistent with the holdings of this opinion.

Reversed and remanded with directions.

WOODWARD and GUILD, JJ., concur.