THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD JONES, Defendant-Appellant.

Third District    No. 76-330

Opinion filed January 26, 1979.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (James E. Hinterlong and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

After a jury trial, defendant, Ronald Jones, was found guilty of attempt murder and armed robbery. The circuit court of Will County sentenced the defendant to concurrent terms of imprisonment of 20 to 40 years for attempt murder and 10 to 20 years for armed robbery.

On November 6, 1975, a juvenile delinquency petition was filed against the defendant, who was then 15 years of age. In the petition, Jones was accused of the armed robbery and attempt murder of David Barker. The State's motion to transfer the cause from the juvenile court was granted and defendant was tried as an adult. The charges against Jones and his coindictee George Williams, a 22-year-old adult, were severed for trial. Williams plead guilty to the armed robbery and was found guilty by a jury of attempt murder. Jones' trial commenced several days later on both charges.

David Barker, the victim of the crime, testified that on November 5, 1975, he was waxing his car in a park when Williams and Jones pulled up behind him in another car. Williams was driving this car and was armed with a revolver while Jones was a passenger and carried a shotgun. After his wallet was taken, Barker was told to get into his car. Barker, driving his own car with Williams riding beside him, followed the robbers car, driven by Jones, into the country. Eventually the two cars and their occupants arrived at an abandoned house. The three started walking up the driveway when Barker felt several blows on the back of his head which he believed, from the sound, were inflicted with a metal pipe. As he lay on the ground, Barker felt another blow and remembered being dragged, his glasses falling off and being held in front of a flight of stairs.

The next events which Barker could recall were his yelling for help, bursting out of a window, and lying in the front yard and finally being in the hospital. Over objection of defendant, Barker was allowed to state he received four .32-caliber bullet wounds in his head or neck and either one or two shotgun wounds in the back. The remaining witnesses called by the State essentially supported Barker's story and described the circumstances under which Jones and Williams were arrested about an hour after Barker was found.

Defendant admitted taking part in the robbery but denied any participation in the shooting of Barker. Concerning the event at the abandoned house, Jones said that Williams unexpectedly hit Barker on the back of the head with the handle of his pistol. Jones still thought they were going to leave Barker unharmed. However, they dragged Barker to the house and after Williams pushed Barker down some stairs, Williams handed Jones a shell for the unloaded shotgun which Jones was carrying and told Jones to shoot Barker. Jones, however, refused and then fled in fear, taking Barker's car since he did not have the keys to his mother's car. Jones disclaimed any knowledge of what Williams was going to do.

At trial, the following instruction was given over defendant's objection.

"A person commits the crime of murder who kills an individual if, in performing the acts which cause death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or

he knows such acts create a strong probability of death or great bodily harm to that individual."

In two consolidated cases, the Illinois Supreme Court in *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, held improper instructions similar to the one presented above. The basis of those decisions was that attempt murder requires the specific intent to kill. Since the instructions allowed the defendant to be convicted on a less culpable mental state, *i.e.*, the intent to do great bodily harm, the defendants were entitled to new trials.

On this appeal, the State does not contend that the quoted instruction was properly given. Instead, the State argues that since the defendant's theory of defense made his intent irrelevant, giving the erroneous instruction was harmless error. The defendant, relying on recent decisions that announced as plain error the failure to give the proper attempt murder issues instruction, contends that it was essential to give the jury proper instructions on the elements of the crime and the failure to do so was not harmless error.

■■ The lines between the theories of plain error and harmless error are at best vague, if indeed they exist at all. Plain error, according to Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) is any error

which affects substantial rights whereas for an error to be harmless, it must be shown beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824. See also *People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) It cannot be doubted that in criminal cases, both the concepts of plain error and harmless error are rooted in the notion that a defendant is entitled to a fair trial and errors affecting substantial rights or which may have contributed to the verdict deny the defendant a fair trial.

The failure to give the appropriate instructions defining the mental state necessary to prove attempt murder has been recently considered in a variety of contexts and invariably resulted in the defendant being given a new trial. In *People v. Tamayo* (1978), 56 Ill. App. 3d 800, 372 N.E.2d 434, the court ruled the failure to give the proper issues instruction was plain error "because of the absolute necessity of having proper issues instructions on all elements of the crime charged. (*People v. Parks*, 65 Ill. 2d 132, 357 N.E.2d 487.)" (56 Ill. App. 3d 800, 805-06, 372 N.E.2d 434, 438. For an extensive discussion of this issue see *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63.) The appellate court's decision on the instructions issue was affirmed by the Illinois Supreme Court in *People v. Tamayo* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.

In *People v. Washington* (1978), 60 Ill. App. 3d 662, 377 N.E.2d 397, the court found that giving instructions which were the same as those before us constituted plain error requiring a new trial. The court noted it is the court and not the defendant who bears the burden of seeing that the jury is instructed on the elements of the crime charged. (See also *People v. Short* (1978), 60 Ill. App. 3d 640, 377 N.E.2d 389; *People v. Roberts* (1978), 56 Ill. App. 3d 667, 372 N.E.2d 143.) While the foregoing cases are certainly forceful authority for granting this defendant a new trial, the Illinois Supreme Court has recently had the opportunity to examine the necessity of giving proper issues instructions.

In *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532, two separate issues instructions were given to the jury, one which was proper and another which was improper. The trial court gave both the State's instructions which did not include lack of justifiable force as an element of the crime, as well as the defendant's instruction, which did. In holding such to be plain error requiring a new trial, the court stated:

> "It is well established that the giving of contradictory instructions on an essential element in the case is prejudicial error, and is not cured by the fact that another instruction is correct. While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in

direct conflict with one another, one stating the law correctly and the other erroneously. This is particularly true where the instruction defines the issues in the case or is mandatory in character." 69 Ill. 2d 61, 66, 370 N.E.2d 532, 534.

The instructions in the present case properly permitted the jury to find the defendant guilty if he had the intent to kill, but also improperly allowed the jury to find the defendant guilty if he had only the intent to do great bodily harm.

After this case was taken under advisement, the Illinois Supreme Court decided *People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969.

Under prior decisions, the instruction given in *Stromblad* defining obscenity was erroneous and the sole issue before the supreme court on appeal was whether the error in instruction required reversal and remandment for a new trial. The court refrained from evaluating the evidence because the error was so fundamental. In discussing the issue the court stated:

"The error in the instructions here was in a definition essential for the jury to make a legally permissible determination of the defendant's guilt or innocence. It was not a mere technical defect. The jury was misinstructed on a fundamental issue and therefore lacked a tool necessary for the performance of its function of determining whether the prosecution had proved defendant guilty of the offense charged. [Citations.] Under these circumstances, the defendant is entitled to a new trial before a properly instructed jury.

In reaching this conclusion we have not evaluated the evidence.
✻ ✻ ✻

In recent cases this court has reversed convictions without evaluating the evidence to determine if the error is harmless where the jury has not been correctly instructed on an essential element of the State's case. In *People v. Trinkle* (1977), 68 Ill. 2d 198, 203-204, and *People v. Viser* (1975), 62 Ill. 2d 568, 581-83, convictions for attempted murder were reversed for failure to properly instruct the jury on the necessary intent element." 74 Ill. 2d 35, 41-42, 383 N.E.2d 969, 972.

Here, the error in instructions permitted the jury to find the defendant guilty of attempt murder without the requisite intent to kill because the issues instruction improperly informed the jury that intent to do great bodily harm was a sufficient mental state for attempt murder. The distinction between attempt murder and lesser crimes is often only a question of the mental state of the offender and without proper

instructions on such a fundamental issue as intent, the jury lacked an essential tool for drawing that distinction. We believe that under these circumstances, the defendant is entitled to a new trial before a properly instructed jury.

Other errors have been urged which should be considered on this appeal.

■ Defendant contends on appeal that since the order of the juvenile judge permitting defendant's prosecution under criminal law was not entered until after the indictment had been returned, the grand jury lacked jurisdiction to return an indictment against defendant and all later prosecutions based upon the void indictment were unlawful. Defendant argues he was prejudiced by the introduction of the indictment at the hearing before the juvenile judge. The defendant claims the jurisdictional defect created by this procedure requires reversal of his conviction.

In *People v. Banks* (1976), 42 Ill. App. 3d 318, 356 N.E.2d 121, the State did not file a motion to transfer the case from juvenile court until after the indictment was returned and defendant had filed a motion to dismiss the indictment. The trial court in that case granted the State's motion to transfer and denied the defendant's motion to dismiss. On appeal the court stated that "[a]lthough the better procedure is to file the petition before seeking an indictment, we hold that this deviation, standing alone, is not of such a magnitude as to require a reversal." (42 Ill. App. 3d 318, 320, 356 N.E.2d 121, 123.) We agree with the decision in *Banks* and believe it is dispositive of the issue before us. We note that here the State filed the proper delinquency petition and motion to transfer the case from juvenile court in advance of the indictment, which was not the case in *Banks*. The trial court was correct in denying the defendant's motion to quash the indictment.

■ Defendant has contended the trial court abused its discretion in not granting a change of venue due to the extensive adverse publicity which preceded defendant's trial. The trial's location need be changed only where the prejudice in the county against the defendant is of such magnitude that defendant cannot receive a fair trial. (*People v. Carmack* (1977), 50 Ill. App. 3d 983, 366 N.E.2d 103.) "It is not required, however, that the jurors be totally ignorant of the facts and issues involved." (*Irvin v. Dowd* (1961), 366 U.S. 717, 722, 6 L. Ed. 2d 751, 756, 81 S. Ct. 1369.) Since this case must be remanded for a new trial and the conditions regarding pretrial publicity have changed, it would serve no useful purpose to consider this issue further.

Because of the view we have taken, it is unnecessary to consider the other errors raised on appeal.

For the foregoing reasons the judgment and sentence of the circuit

court of Will County for armed robbery is affirmed. The judgment of that court for attempt murder is reversed and the cause remanded for a new trial.

Affirmed in part, reversed in part and remanded.

ALLOY and SCOTT, JJ., concur.